### LEHMAN *v.* McQUOWN and others.

*(Circuit Court, D. Colorado. May 12, 1887.)*

1. DAMAGES—INJUNCTION BOND—WRONGFUL INTERRUPTION OF POSSESSION.

Personal property of a debtor was sold at sheriff's sale, and bought by the debtor's wife for less than its real value. A creditor thereupon obtained the appointment of a receiver to take charge of the property so bought, and an injunction to restrain interference; alleging that the purchase was not an honest one. The *bona fides* of the transaction was afterwards established, and the receiver settled his accounts, and was discharged, and turned over to the purchaser the residue of the property remaining in his hands; a portion of the same having been sold by him. The said purchaser then claimed damages upon the injunction bond, against said creditor, by reason of the wrongful interruption of her possession of the property. *Held,* that she was entitled to recover.

2. SAME—MISMANAGEMENT OF RECEIVER—DISCHARGE.

After such receiver has settled his accounts, and been discharged, without objection, such purchaser cannot recover, as an item of such damages, any alleged loss by reason of such receiver's mismanagement, for which, if established, the receiver might have been held responsible before his discharge.

3. SAME—PROPERTY IN HANDS OF RECEIVER—DEPRECIATION.

The amount of an alleged depreciation in the value of the property, in such case, while in the receiver's hands, cannot be recovered as an item of damage, when it appears that the receiver did all he could to dispose of the property to the best advantage.

4. SAME—LOSS OF PROFITS.

The profits, in such case, which might have been made by the use of such property, if the possession of the receiver had not occurred, are so far speculative that, in the absence of clear testimony, they cannot be measured by any exact standard.

Assessment of Damages on an Injunction Bond.

*S. P. Rose,* for plaintiff.

*J. W. Horner,* for defendants.

BREWER, J., *(orally.)* In 1,710, *(Lehman* v. *McQuown,)* in which an assessment of damages on an injunction bond is sought, the facts are these: In the fall of 1884, one George McQuown was indebted to sundry creditors. Proceedings were had, by assignment and suit, which culminated in a sheriff's sale, in which Mrs. McQuown, the wife of George McQuown, purchased the property. By mistake or accident, the principal creditor was not represented at the sale, and Mrs. McQuown bought the property at much less than its real value. The creditor, fancying that the transaction was not honest, after judgment, obtained the appointment of a receiver, and an injunction restraining the defendants from interfering with his possession. Then, upon a hearing of the matter before me, I was constrained to hold that, notwithstanding all the circumstances which the creditor showed of suspicion, Mrs. McQuown was a *bona fide* purchaser at a sheriff's sale, and if she made a good bargain it was her good luck, and not a fraud upon the creditor. I therefore ordered a decree in her favor, and the property was turned back to her, having been in the possession of the receiver four months, less six days. The property which passed to his hands was a stock of wall paper of about $6,800 in value. The accounts of the receiver were settled, and he was discharged. Upon an application for the taxation of costs, I charged the whole fees of the receiver upon the complainant. As the receivership was not justified, and as the receiver took the place of the owner, and conducted the business during that time, it seemed to me no more than fair that that which was paid to him for his personal services was an expense which was fairly to be borne by the complainant, who had wrongfully put him in possession. Now, in addition to that, damages are sought by reason of the dispossession of Mrs. McQuown, the owner, and a claim of several thousand dollars is presented. She claims a thousand dollars for the depreciation in value of the stock during the four months; another thousand for the injury to her credit; another thousand for the loss of custom,—amounting, these different items and others, to several thousand dollars. Another thousand was claimed on the ground that the receiver sold portions of a single pattern, so as to leave broken and fragmentary pieces of comparatively little value.

I have here a mass of testimony. Some of the items of damage, certainly, are not to be considered. If the receiver mismanaged; if he

sold improperly from one pattern, leaving worthless fragments; in fact, if anything he did as receiver was done improperly, and to the prejudice of Mrs. McQuown,—it is a matter for which he should be held responsible; but when his accounts have been approved, and he discharged, without objection, the court will not inquire, or permit the inquiry, as to the way he managed.

Again, in reference to the depreciation in value. The property was taken possession of in the commencement of the wall-paper season in April, and was returned in July; and the claim is made that the property, meantime, had gone down in value, and that this is a matter to be taken into account. But this must be upon the assumption that the property, at the time it was taken possession of, could instantly be converted into money; and the illustration which was very forcibly put by counsel was of wheat: It is taken possession of to-day, when its market value is so much; it is held for four months; its market value goes down, —certainly that diminution in value is something of which the party has a right to complain. But it was admitted on the hearing last fall, in reference to the taxation of costs, that the receiver had acted prudently. He had a stock of goods, which he had done the best he could to dispose of, and, if he had not fully succeeded, then it was because it was property which could not be thrown at once on the market, and converted into money at anything like its value. As shown by the very result of the sheriff's sale, it was not property for which one could go out on the street and find a purchaser in the open market; and if the receiver has disposed of that property, or so much as he did, in the best manner he could, and in a manner which was commended by both parties, and for cash, it would not be fair to hold that, because he did not succeed in disposing of all the property, the complainant is to be charged with the difference between the value in April and in July of that undisposed of.

Nor is there much of this testimony that helps me in any way. That a party suffers damage when his property is taken out of his possession, and placed in the hands of a receiver, goes without saying. Most of this testimony is the opinion of witnesses as to how much could have been made by Mrs. McQuown carrying on business by herself. If she had conducted business with a number of paper hangers, she might have made profits on their work; she might have disposed of this entire stock. But could she? Was that a season in which there was such a demand that any person could have disposed of this property more rapidly or more successfully than the receiver? The testimony of two of the witnesses who appear to be most familiar with the trade in this city seems to indicate the contrary; and to award damages upon the belief of witnesses that, if the owner had held the property, she could have managed it to more profit, is entering upon a sea of speculation.

As I said, it goes without saying, that the interruption of the possession is a damage; and I think that it is no more than fair that I should take this case, upon this testimony of the situation of the parties, the amount of the property, the time of the interruption of possession, and

do just what a jury would probably do. They would not be able, and I do not see how any one can sit down and figure out, by dollars and cents, from the statements of these witnesses, a satisfactory and mathematical statement of the amount of damages which the party has sustained. And I have done this, in my own mind: Taking the fact that this property was of sixty-eight hundred dollars in value; that the receiver evidently conducted the business fairly and satisfactorily, converting the property into cash, so far as he went, and selling nothing on credit,—a transaction and course of business which ordinarily, I think, results in more profit than larger sales on credit; the amount of the property that he returned, and the time which the possession was detained from the owner; and also considering the fact that the fees of the receiver have already been taxed against the complainant,—I shall award damages in the sum of $250; for which sum, with all the costs that have heretofore been taxed, an execution will issue.