## TOWN OF DARLINGTON v. ATLANTIC TRUST CO.

(Circuit Court of Appeals, Fourth Circuit. May 28, 1895.)

### No. 116.

EVIDENCE—MEMORANDUM ON PUBLIC RECORD.
   A memorandum, indorsed upon the assessment roll of a municipal corporation, to the effect that the property of a corporation, not included in any constitutional or statutory exemption, is exempt from taxation, is incompetent to prove that it is in fact exempt.

2. SAME—ACCOUNT BOOKS OF MUNICIPAL CORPORATION.
   The account books of a municipal corporation are not public records in such a sense as to make their contents evidence, and the keeper of such

books cannot testify to facts appearing from them, without laying the same foundation as in the case of private books, and showing that the entries are of the character that can be given in evidence by the party making them.

3. MUNICIPAL CORPORATIONS—RAILROAD AID BONDS—SOUTH CAROLINA CONSTITUTION.

The legislature of South Carolina has power, under article 9, § 8, of the constitution of the state, providing that it may permit municipal corporations to assess and collect taxes for corporate purposes only, to authorize such corporations to issue bonds to aid in the construction of railroads.

4. SAME—LIMIT OF INDEBTEDNESS.

The charter of a town, permitting it to issue bonds in aid of the construction of railroads to any amount, is not in conflict with article 9, § 17, of the constitution of South Carolina, limiting the indebtedness of municipal corporations to 8 per cent. of their taxable property, since the provision of the charter will be held to operate only within the constitutional limit.

5. TAXATION—REFUND OF TAXES.

A statute providing that a large part of the taxes paid by a certain class of persons shall be refunded to them does not have the effect of exempting the property of such persons from taxation, so as to reduce the amount of taxable property upon which a limit of indebtedness is to be computed.

6. SAME—FAILURE TO MAKE ASSESSMENT IN TIME.

A municipal corporation cannot dispute the validity of an assessment made by its officers, on the ground that it was not completed and filed within the statutory time, so as to invalidate an indebtedness based upon such assessment.

In Error to the Circuit Court of the United States for the District of South Carolina.

This was an action by the Atlantic Trust Company against the town of Darlington, S. C., to recover the amount of certain coupons cut from bonds of the town. The circuit court, upon a trial by the court without a jury (63 Fed. 76), gave judgment for the plaintiff. Defendant brings error. Affirmed.

J. E. Burke (Henry A. M. Smith, on the brief), for plaintiff in error.

Augustine T. Smythe (Sullivan & Cromwell, on the brief), for defendant in error.

Before FULLER, Circuit Justice, GOFF, Circuit Judge, and SEYMOUR, District Judge.

GOFF, Circuit Judge. The town of Darlington, in the state of South Carolina, acting by its mayor and board of aldermen, who had been duly authorized so to do, on the 22d day of April, 1890, made an agreement with the Central Carolina Land & Improvement Company, by which that company bound itself to construct and equip a railroad that should be acceptable to the railroad commissioners of the state of South Carolina, from Sumpter, via Darlington, to Bennettsville; and in consideration thereof the town of Darlington agreed to turn over to the said land and improvement company, upon the completion of the railroad, the bonds of said town (due 30 years after date, bearing 5 per cent. interest per annum) at the rate of $2,000 per mile (not including sidings and side tracks),

and also to convey to that company a certain tract of land located in Darlington, containing 24 acres, for the use of said railroad, and, in addition, to exempt the railroad company from all taxes to be assessed for the period of five years from its completion, and also to pay the one-half of all expenses incurred in obtaining the right of way for said railroad to the town of Bennettsville. On the 23d of April, 1890, an additional agreement between the same parties relative to the same matter was entered into, by which 80 of the bonds described in the first contract, of $1,000 each, with certain other securities amounting to $5,000, were deposited in escrow with the American Loan & Trust Company of New York, which bonds and securities, or so much of the same as should be proper, were to be delivered to the Central Carolina Land & Improvement Company upon the performance by it of the first-mentioned agreement, which was to be evidenced by the certificate of the railroad commissioners of the state of South Carolina; it also being provided that, should any of said bonds and securities so deposited remain in the hands of such loan and trust company, after the land and improvement company has been paid the full sum due it, such excess should be returned to the town of Darlington. The bonds were duly executed by the town, and deposited with the loan and trust company according to the terms of the agreement referred to; and afterwards, by an agreement between the same parties, dated April 1, 1891, the Atlantic Trust Company was substituted in the place of the American Loan & Trust Company, the bonds and securities being turned over to it.

The charter of the town of Darlington contains the following provisions:

Sec. 17. That the said mayor and aldermen shall annually appoint three citizens of said town to assess the value of real estate for taxation; and said assessors, before entering upon their work, shall take an oath to fairly and impartially assess each parcel of real estate in said town, and a report in writing of the assessment as made by them shall be signed by said assessors, and the same filed in the office of the clerk of said town within a period of ten days next ensuing upon the date of their appointment to assess the real estate of said town.

Sec. 29. That the said mayor and aldermen may, for the purpose of internal improvements, borrow money, issue bonds or scrip therefor, bearing not a greater interest than 7 per cent., payable at such times as they may think advisable, and payable out of the taxes and incomes of said town, provided said principal of bonds and scrip shall at no time exceed $5,000, except for the purpose of aiding in the construction of railroads; and for that purpose the said mayor and aldermen may issue bonds or scrip in any amount; provided, further, that the right to issue said bonds or scrip shall exist only in the majority vote of the town, as hereinafter provided. That no one shall be entitled to vote on said question, unless he or she is the owner of property within the corporate limits of said town, and has returned and paid taxes on $100 worth of property the year immediately previous to said voting, and on each $100 worth of property so returned or paid for, the person or persons shall be entitled to one vote. The manner of holding said election shall be provided for by the town council of said town: it is also further provided that the time, manner and form, of payment of said bonds or scrip, shall be provided for by the town council of said town, and that no bond shall be sold for less than its par value.

The constitution of the state of South Carolina contains the following provision:

Article 9, § 17. No bonded debt hereafter incurred by any county, municipal corporation or political division of this state shall ever exceed eight per centum of the assessed value of all the taxable property therein.

The town council of Darlington, on January 31, 1890, appointed the board of assessors, as authorized by section 17 of the charter. The board so appointed, made the assessment for the year 1890, but made no return and filed no report of assessment within 10 days after its appointment, but did file the same on the 28th of February, 1890. The assessment so made included the property of the Darlington Manufacturing Company, a corporation doing business in said town, and entitled to the benefits of the provisions of section 169, subd. 23, Gen. St. S. C., which reads as follows:

Any person who, since the 1st of January, 1872, has invested, or may invest capital in the manufacture of cotton, woolen or paper fabrics, iron from iron ores, and agricultural implements, within this state, shall, for the period of ten years from the date of his investment, be entitled to receive from the treasury of the state, a sum equal to the aggregate amount of state, and, from the county treasurer, the aggregate amount of county taxes, less the two mills for school purposes; and from the treasurers of all the municipal corporations, a sum equal to the aggregate amount of municipal taxes, which shall be levied and collected upon the property or capital employed or invested directly in such manufactures or enterprises; not including herein the tax levied upon the land upon which the factories may be erected. The sum of money so to be repaid, to be fixed and determined by the comptroller general in accordance with the tax returns, the state tax to be paid by the state treasurer on his warrant, and the county tax by the county treasurer, under the order of the comptroller general.

By virtue of section 18 of the charter of the town of Darlington, the personal property within the same is assessed for taxation by the clerk of the town upon the returns as made by the property owners. The aggregate assessment of the real and personal property located in said town made in February, 1890, was $1,119,685. Included in this aggregate was the property of said manufacturing company, its real estate being valued at $70,000, and its personalty at $125,000, on which it was entitled to receive the refund of taxes provided for in said section 169. Excluding the property of such manufacturing company from the assessment roll, the total of taxable property in the town for the year 1890 was $824,685. In April, 1890, an election was held under said section 29, and the result was in favor of issuing the bonds now in controversy, which were then duly executed and deposited, as before mentioned. Thereafter, upon the certificate of the railroad commissioners of the state of South Carolina that the railroad had been completed as contracted for, bonds to the amount of $73,000 were turned over to the order of the Central Carolina Land & Improvement Company, for which that company delivered to the town of Darlington stock of the Charleston, Sumpter & Northern Railroad Company of the par value of $73,000, as shown by that company's certificate of stock for 730 shares. Said bonds were received by the Atlantic Trust Company, and held by it to secure the payment of a loan to the Central Carolina Land & Improvement Company amounting to $75,000, which

said loan had been used by the last-named company in constructing said railroad. The town authorities afterwards surrendered the certificate for 730 shares of stock, and received in lieu thereof another for 680 shares, and other certificates for the residue, made out in the names of various parties who had subscribed for the same, and who paid the town cash for the same, at the par value of the stock. This suit was brought by the Atlantic Trust Company to recover from the town of Darlington the sum due by it for the overdue and unpaid coupons of the bonds so issued and outstanding. The case was, by agreement of the parties, tried by the court without a jury, and judgment was rendered in favor of the plaintiff below for the sum of $6,873.60 and costs. The defendant below brings the case here on writ of error.

It appears from the bill of exceptions that during the trial the defendant below offered to prove by the official custodian of its records that it was shown by the assessment roll book of the town of Darlington that there was written thereon, below the total aggregate of the property subject to taxation in said town, a statement that the property of the Darlington Manufacturing Company, which was included in such aggregate, was "exempt from taxation," and that the court refused to permit such testimony to be given. The plaintiff in error insists that the court below erred in so doing. It is claimed that it is the duty of a party entering into a contract with a municipal corporation, relative to its bonds, to examine the official records of such municipality, in order to ascertain if the several requirements of the constitution and the laws have been respected. Hence the insistence that, in this case, it was shown by the rolls that the indebtedness to be incurred by the issuing of the bonds in suit would have exceeded 8 per cent. of the property of the town as assessed for taxation,—excluding the property of said manufacturing company,—and that the parties receiving such bonds are presumed to have made such examination, and to have acted on the information so obtained. We will concede that in such cases great caution should be exercised, and that all proper efforts should be resorted to by those dealing with municipal corporations to see that they act within constitutional and statutory limitations. Still, does it follow in this case that the situation claimed by plaintiff in error would have been shown to exist by the testimony so excluded? Will a statement of the character indicated—will an indorsement made by the town clerk on the official assessment rolls to that effect—serve to release the property so referred to from taxation? Can the provision of the constitution of South Carolina, by which only property used for municipal, literary, scientific, or charitable purposes is exempt from taxation, be rendered inoperative by such action on the part of the custodian of the records of the towns in that state? Certainly not, and the mere statement of such a proposition should be its own refutation. It follows that the court below did not err in excluding such testimony.

It further appears that, pending the trial, the defendant below, during the examination of a witness who had testified that he was the custodian and bookkeeper of the town of Darlington, and who

then had its official account books before him, asked said witness to state from such books the amount of the outstanding bonded indebtedness of said town during the month of April, 1890, and that on objection of the plaintiff below the court refused to permit such question to be answered; that defendant below then offered to prove by the same witness that the books before him were the official account books of the town of Darlington, in his custody as the clerk of said town, and that the same were either in his handwriting or in the handwriting of his predecessor in office, and then to show from the same the amount of such indebtedness of said town in January and in April, 1890, which testimony so offered was also refused by the court, and the refusal is now assigned as error. The books so offered were not public records in any such sense as to make their contents evidence. There was no effort made to verify the entries, nor to lay the foundation required to authorize the witness to testify as to the entries not made by him. The party making part of the record was not produced, nor was his absence accounted for. It does not appear what part of the entries in the books were made by the witness, nor when they were made, whether before or after the institution of this suit, nor whether they were made with direct reference to the defense of the same. Again, so far as the record discloses, the entries offered and excluded may have been entirely of the character that cannot be given in evidence by the party in whose behalf they were made. It is well established that a private entry in the books of a municipal corporation will fall within the rule applicable to private books, and cannot be given in evidence by the party by whose direction it was made. Dill. Mun. Corp. (4th Ed.) § 304, note; 15 Am. & Eng. Enc. Law, 1076. It will be observed that the court below did not refuse to hear evidence tending to show what the actual bonded indebtedness of the town of Darlington was at the time mentioned, but declined only to let certain books be used for that purpose. We are of the opinion that the plaintiff in error has not been prejudiced as to the merits of the case by the action of the court now complained of. The circumstances under which the evidence excluded was offered, and the record objected to was made, were, to say the least, unusual. The town was so situated that it was to its interest to show, not that it was free from debt, but that it was largely in debt; and therefore the rule relied on as to admissions against interest, generally applicable, is out of place in this instance. But, independent of this, as we see this case, the bonded indebtedness of Darlington in January and in April, 1890, was immaterial, so far as the issue to be determined by the court was concerned. The bonds were not issued in 1890, and in fact they did not become part of the indebtedness of the town until in August, 1891, when they were delivered, when the debt was in fact incurred, and from which time it bore interest. The constitutional inhibition may have existed in April, 1890, and not have applied in August, 1891. The indebtedness of the town as it existed in August, 1891, might have been important and material, but that could not have been shown by entries made in books relating to its debts existing in January and April, 1890.

It is claimed that the court below erred in holding the act (20 S. C. St. at Large, 203) under which the bonds were issued to be constitutional, and it is insisted that the same is void, for the reason that it authorizes the issue of municipal bonds in aid of the construction of a railroad, when such authority, under the constitution of South Carolina, can only be given for corporate purposes. It is true that such legislation can only be sustained by holding that the construction of a railroad is in aid of the legitimate purposes of a municipal corporation, which, in substance, the court below found, and in which conclusion we concur. The constitution of South Carolina (article 9, § 8) authorizes the legislature to permit municipal corporations to assess and collect taxes for corporate purposes, and none other. This question is no longer a doubtful one, as the uncertainties formerly existing relative thereto have been removed by numerous recent decisions of our courts of final resort. The legislature can enlarge the powers of municipal corporations, as was done in the present case; and it may also determine what the corporate purposes are that it has authorized the municipality to exercise. Such a corporation is part and parcel of the governmental power of the state. We quote approvingly from the opinion of the learned judge who decided this case below, as follows:

"The legislature may declare that corporate purposes may be promoted by affording aid to a railroad. The unchanging course of legislation shows that this is a public purpose as well as a corporate purpose, and without question cities, towns, villages, and counties have again and again been clothed with this power. It is true that in Floyd v. Perrin, 30 S. C. 1, 8 S. E. 14, arguendo, the court says that counties have the right to aid in such construction because they have jurisdiction over highways, and a railroad is a highway. But streets in cities, towns, and villages are also highways. And, although the authority of the county over its highways ends at its boundaries, a county has the right to aid a railroad whose termini are in other counties, perhaps in other states. Floyd v. Perrin, relied on in argument, does not decide that aid to a railroad cannot be a corporate purpose. That case only decides this: Townships in South Carolina being mere territorial subdivisions of land, with no public duty or function whatever, no corporate or public purpose, an act declaring them corporations and permitting them to subscribe to a railroad is not constitutional. Why? Because, having no corporate purpose, the investment in railroad stock could be used for no purpose whatever. Making them corporations, authorizing them to invest in railroad stock, were but steps—incomplete steps—to secure the constitutionality of the action. The legislature should have given them a corporate purpose. This it did not do, and the whole thing was void. But cities, towns, villages, and counties have well-defined corporate purposes which can be promoted by such investments. The existence of these corporate purposes, and their promotion by aiding railroad enterprises, gives them their constitutional character. As a conclusion of law, this act is not in conflict with section 8, art. 9, of the constitution."

The supreme court of South Carolina in State v. Whitesides, 30 S. C. 584, 9 S. E. 661, said:

"Now, railroads have been declared by the courts in most of the states, our own included, and by the supreme court of the United States, as improved highways, and therefore as much entitled to be aided by the taxing power as ordinary highways. 1 Dill. Mun. Corp. (3d Ed.) § 158; Cooley, Const. Lim. (2d Ed.) c. 4. This may have been doubted once, and, if it was an open question, might still be doubted, but the decisions in that direction have been so numerous and so uniform that, to use the language of Judge Dillon, 'if they have not terminated doubt, they have at least ended judicial discussion.' The sub-

ject-matter, then, of this act, was within the range of a public purpose, and so far legitimate; but it may be urged that the purpose here, being confined to mere townships, limited localities, and not extending to the public at large, could not fall within the doctrine above. What is the meaning of the term 'public'? This term is opposed to the term 'private,' and, according to the best lexicographers, means 'pertaining to or belonging to the people; relating to a nation, state, or community.' But to make a matter a public matter it need not pertain to the whole nation or state. It is sufficient if it pertains to any separate or distinct portion thereof, or community."

In the case of State v. Neely, 30 S. C. 604, 9 S. E. 664, the supreme court says:

"The proposition that the construction of a railroad is such a public purpose as to warrant the levy of taxes to aid in building it is too well settled by the very decided weight of authority to admit of further discussion, although, if the question were an open one, its correctness might well be disputed. So, too, it seems to be settled by the weight of authority that the legislature may not only delegate this power of levying taxes to aid in the construction of a railroad to municipal corporations, but may also, by the exercise of its original power of taxation, directly impose such tax upon any territorial division of the state, to aid in the construction of a railroad supposed to be of special advantage to the people residing within such territorial division, provided a majority of those people have signified their assent to the imposition of such a tax."

Chief Justice McIver, in his opinion in the case of Floyd v. Perrin, supra, says:

"So, too, perhaps, the general assembly, but for the fact that the constitution (section 19, art. 4) has clothed the county commissioners with jurisdiction over roads, highways, etc., might have passed an act creating the township of Ninety-Six a corporation, and investing it with the control and management of highways; and, as promotive of that corporate purpose, might have invested it with power to levy taxes to aid in the construction of a railroad, upon the doctrine, which, after much conflict of opinion, seems to be settled, that a railroad is a highway, and therefore a municipal corporation, charged with the supervision and control of highways, may be invested with power to aid in its construction."

We conclude that the bonds were constitutionally issued, for a corporate purpose comprehended by the charter of the town of Darlington, which also contained the power to carry that purpose into effect.

It is also claimed that section 29 of the charter of the town of Darlington is in conflict with section 17, art. 9, of the constitution of the state of South Carolina, for the reason that no limit is fixed in said section as to the amount in the aggregate of aid that can be given by the town towards the construction of railroads. But we think that in construing the statute or charter, the presumption is that the legislature intended that bonds might be issued to the full limit authorized by the constitution,—"in any amount" not prohibited by the organic law. If the said section of the charter and the requirement of the constitution alluded to can be reconciled, it must be done, and, in our judgment, there is no difficulty in doing so.

It is also insisted that the assessment rolls of the real and personal estate within the town of Darlington for the year 1890 included such property owned by the Darlington Manufacturing Company, and the claim is made that the real and personal property.

of that company were exempt from taxation, and should have been excluded from the amount on which the tax was levied; thus making the aggregate amount of the bonds issued a sum greater than the 8 per cent. limit mentioned in the constitution. But can the position assumed—that the property of that company was not liable to taxation by the town of Darlington—be maintained? We are unable to find any provision of the constitution under which such exemption can be justified. The said property was not used for either municipal, educational, literary, scientific, religious, or charitable purposes, and hence it was, by the express mandate of the organic law, subject to taxation, for the payment of all debts contracted under authority of law. The town authorities had not power to release it, nor did they attempt to do so. On the contrary, they assessed and taxed it. The statute cited (Gen. St. 1882, § 169, subd. 23) does not authorize the omission of such property from assessment and taxation, but requires it to be duly taxed; and the fact that such enactment permits the subsequent return of the greater part of the taxes so levied and collected is immaterial so far as the point we are now considering is concerned. The assessed value of the property of said company was properly included in the aggregate valuation of the property liable to taxation in the town of Darlington for the year 1890, and the court below did not err in so holding.

The plaintiff in error insists that the assessment made by authority of the provisions of the charter of the town of Darlington, on which the levy of taxes for the year 1890 was based, was unlawful, because not completed and filed within the time allowed by said charter, but we think that, so far as the town itself is concerned, the contention is without merit. Those whose property was so assessed, who were required to pay the taxes, and who were familiar with the mode of making and returning the assessment, made no complaint, while the authorities of the town ratified the assessment, and confirmed the legality of the return by laying and collecting the tax. It would not be proper to now permit those who so made the assessment, and who imposed, collected, and enjoyed the benefits of the tax levied by virtue of the same, to question the validity of their own act. There are many reasons why the town of Darlington should be compelled to respect its obligations in respect to the bonds mentioned and the coupons now in suit, and no good cause has been shown why it should be permitted to falsify its own representations, evade its liabilities, and involve others who have made expenditures and investments on the faith of its repeated promises and presumed honesty.

The further and last objection to the validity of the bonds we now consider, although we have, in effect, disposed of it in connection with other matters. It is insisted that the town of Darlington disposed of the bonds at less than their par value, which it is claimed was prohibited by the statute in such cases made and provided; and also it is contended that such prohibition prevented the issue of the bonds in exchange for the stock of a railroad company. But the facts are, as shown by the evidence, that the proceeds of

the bonds applied to the construction of the road constituted a fund equal in amount to the full par value of the bonds, and also that for the stock sold by the town its treasury received in cash a sum of money equal to the par value of the stock so sold. The statute authorized the town to issue the bonds, and the railroad company expended in the construction and equipment of the road a sum from the proceeds of the bonds equal to their par value. It is, we think, clearly shown that the bonds were disposed of by the town at par. It is not for us to consider whether or not the subscription made by the town of Darlington, in its bonds, towards the construction of the railroad, was a profitable one. It had the right to subscribe, and the power to issue bonds. The road desired and contracted for has been built according to the terms of the agreement relating to the same, and is now in operation. The town has received the consideration stipulated for when the bonds were issued, and is now enjoying the benefits of the same. The coupons offered in evidence were past due, and unpaid. The town of Darlington was liable for the same, and judgment was properly rendered therefor. The defense was without merit, and the judgment of the court below is affirmed.