COOSAW MIN. CO. v. CAROLINA MIN. CO. et al.

SAME v. FARMERS' MIN. CO. et al.

(Circuit Court, D. South Carolina. August 15, 1896.)

1. INJUNCTION BOND—DAMAGES FOR BREACH.
   Pending proceedings to determine whether the C. Co. had the exclusive right to mine phosphate rock in the C. river, as against the state phosphate commission and two companies acting under a license from the commission, an injunction was issued restraining the commission and the licensee companies from removing the phosphate deposit on the C. river. The decision having been adverse to the C. Co., the injunction was dissolved, and suit was brought on the injunction bonds. Held, that the licensee companies were not entitled to recover profits which they might possibly have made had they been allowed to work the C. river in addition to the other navigable rivers in the state which they were licensed to work, since the conditions of successful working varied from day to day, and it appeared that the price of such phosphate constantly fluctuated, and would probably have fallen considerably had that from the C. river been put on the market.

2. SAME—STATE OFFICERS.
   The members of the state phosphate commission were not entitled to recover on the bond, because restrained from granting licenses to dig in the C. river, they having no pecuniary interest in the licenses.

3. SAME—RIGHTS OF STATE.
   Nor was the state entitled to recover the royalties on the phosphate which might have been mined and shipped, these amounts being purely conjectural.

4. SAME.
   The fact that an injunction was dissolved does not authorize the recovery of damages on the bond, when the injunction was obtained in good faith, every consideration of equity demanded that matters remain in statu quo until an authoritative construction of a doubtful act of assembly, and the persons enjoined were not put at any disadvantage by the injunction.

5. EVIDENCE.
> Books of a private corporation are not evidence as against another person.

Bills by the Coosaw Mining Company against the Carolina Mining Company and others, and against the Farmers' Mining Company and others.

Smythe, Lee & Frost and McCradys & Bacot, for complainant.

Wm. A. Barber, Atty. Gen., Mitchell & Smith, and Geo. S. Mower, for defendants.

SIMONTON, Circuit Judge. The Coosaw Mining Company obtained from the general assembly of South Carolina the exclusive right of digging, mining, and removing phosphate rock from the bed of Coosaw river, in that state. Soon after the passage of this act, the question was agitated whether this privilege and right so granted to the Coosaw Company was limited in duration, or whether it should continue in perpetuo, so long as certain prescribed conditions were complied with. James Conner, Esq., attorney general, in a formal report to the general assembly, stated forcibly this question, as one requiring action upon the part of the state, and urged that such action should be taken in order to solve whatever doubts existed in the case. For some years this advice was neglected. In 1890 the general assembly took action and solved the question for itself, passing an act declaring that whatever rights the Coosaw Company had in that river were ended, and putting the phosphatic deposits therein under the charge of a board of commissioners, who were authorized to issue licenses to such persons as they should approve, to dig and mine phosphate deposits in the navigable streams of this state, including the beds of Coosaw river. Thereupon, on March 6, 1891, proceedings were entered in this court by bill upon the part of the Coosaw Mining Company against the individuals who composed the phosphate commission, and the Carolina Mining Company, a corporation acting under the license of the commission, praying an injunction against them from removing the phosphate deposit in Coosaw river, and by another bill, of the same date, for the same purpose, against the same individuals and the Farmers' Mining Company, another corporation, having similar general license. The purpose of both proceedings was to test the constitutionality of the act of assembly above referred to, and to ascertain and define the rights of the Coosaw Mining Company. A temporary injunction in each case was issued. In each case the complainant was required to enter into an injunction bond in the penalty of $25,000, and with this condition, to wit:

"The condition of the above-written bond or obligation is such that whereas a preliminary injunction has been issued in this case, on the 6th day of March, A. D. 1891, against the said Carolina Mining Company, Benjamin R. Tillman, Y. J. Pope, W. H. Ellerbe, J. D. Montgomery, George H. Walter, and A. W. Jones: Now, if the above-named Coosaw Mining Company, Moses H. Lopez, and John B. Adger, Jr., or either of them, their or either of their certain attorney or attorneys, executors, or administrators, shall pay to the said Carolina Mining Company, Benjamin R. Tillman, Y. J. Pope, W. H. Ellerbe, J. D. Montgomery, George H. Walter, and A. W. Jones, the defendants in this action, any and all damages which they may suffer by reason

of the said injunction, if it shall be finally determined that the complainants in this action are not entitled thereto, then this obligation shall be void and of no effect; otherwise to remain in full force and virtue."

Pending these proceedings, the pleadings in which had been completed, another cause involving the same question was removed into this court from the state court, on May 28, 1891. This was a complaint in the nature of a bill in equity, filed by the state of South Carolina on March 23, 1891, against the Coosaw Mining Company, enjoining that company from taking phosphate rock in the beds of the Coosaw river, and enforcing the provisions of the act of 1890. That case came on to be heard, and the constitutionality of the act was established by decree dated September 16, 1891. An appeal was taken to the supreme court of the United States, the result of which was the affirmance of the decree of this court on April 4, 1892. 12 Sup. Ct. 689. Pending this appeal, to wit, October 6, 1891, seven months after the preliminary injunctions were granted, a motion in each case was made by the defendants to dissolve the injunction. These motions were taken under advisement, and on the 5th April, 1892, an order was entered dismissing the bill in each case, and dissolving the injunction. In May, 1892, the defendants made application to this court for the delivery to them of the injunction bond in each case, that they might bring such actions thereon as they might be advised. This application was not granted. The rule approved in Russell v. Farley, 105 U. S. 433, was followed, and the defendants were authorized to produce before the master such evidence of damages as they may claim, with leave to the complainant to reply thereto if it be so advised; and the testimony was ordered to be reported to this court. The object of this reference was to determine whether damages other than the costs of the case should be allowed, this question being reserved. Coosaw Min. Co. v. Farmers' Min. Co., 51 Fed. 108. This order was dated June 17, 1892. The first action under the order was April 1, 1895. The testimony in behalf of the defendants (actors) was closed about the end of May, 1896. Thereupon the sureties on the injunction bonds (the Coosaw Mining Company having been dissolved and gone out of existence, July 1, 1893) gave notice of the motion now heard. "That the court rule upon the objections noted before the special master as to the testimony offered on behalf of the said defendants the Carolina Mining Company and the Farmers' Mining Company. and to strike out the testimony so objected to, as incompetent and irrelevant, and to hold that the testimony so offered does not make out any case for damages on said bonds, or on any case requiring the introduction of testimony on the part of complainant, and for a decree dismissing this entire proceeding, and holding that no damages shall be assessed under the injunction bonds aforesaid." It appears from the report of the master that no testimony whatever has been offered on the part of the persons who composed the board of phosphate commissioners, whose names are in the bonds as obligees. The mining companies alone offered testimony.

The questions presented on this motion are: Is the testimony offered by these mining companies competent and relevant? If so,

does it make out such a case as will justify the court in awarding damages, or call for testimony in reply from complainant? Is this, in any aspect, a case for damages other than the costs of court, which have already been paid?

Before going into these interesting questions, it is well to dispose of one branch of the case. No testimony whatever has been offered upon the behalf of A. W. Jones, George H. Walter, J. D. Montgomery, B. R. Tillman, Y. J. Pope, and W. H. Ellerbe. No damages which they have sustained have been proved. Nor is it easy to see how they can have sustained damage. The injunction order restrained them from granting licenses to dig in this Coosaw territory. They had no pecuniary interest in these licenses whatever. They lost nothing by the prohibition. The damages to be assessed are damages in money. The order may have wounded their sensibilities; but this cannot be compensated in money. Some faint effort has been made to show that the state lost something by the injunction. But these gentlemen are not the state, nor was the state proceeded against in their persons. Were this the case, the cases could not have proceeded, and the action of the court, not only in granting the injunction, but in requiring the bonds, would have been utterly null and void.

It is said that the injunction stopped mining in Coosaw river for a time, and that although not a pound of rock was removed, and no property of the state disturbed, during this period, she lost the interest on the royalty which would have been received if the mining operations had not been stopped. But the royalty is paid, not on rock dug and mined, but on rock shipped. It nowhere appears with any degree of certainty how much rock could or would have been dug and mined during this interval; nor how much, if any, of rock so dug and mined, would or could have been shipped. Any conclusion upon either of these points would be purely conjectural and on supposed bases. This part of the case may be dismissed from further consideration.

The two mining companies claim damages in this case. Each of them had for years enjoyed a general license of digging, mining, and removing phosphate rock from the navigable streams of this state, other than the part of Coosaw river used by the Coosaw Company. They had purchased and prepared their plant, and had created their capital for the enjoyment and use of this license; and they had enjoyed and used it since their incorporation. They continued the operations during the entire period the injunction was pending. Their claim is that, if they had not been kept out of Coosaw river, they could have gone into a more abundant territory, have mined to greater advantage, and would have obtained many more tons of rock than they had actually mined elsewhere. They propose to show what they dug elsewhere, and what they actually dug after they were permitted to dig in Coosaw river after the injunction was dissolved; and they seek to establish by the comparison, not what they lost, but what they might have gained if the order of injunction was not in force. If we were dealing with mathematical propositions or fixed quantities, this would be a problem

capable of solution. It must first be shown what was the result of mining operations in Coosaw river after the dissolution of the injunction, during a period of equal duration with that of the continuance of the injunction, by the act of the complainant. Next, it must be shown that during this last-named period they could have mined in Coosaw river under precisely the same circumstances, and with precisely the same results, as they did in the first-named period. There must be shown the price which would have been received for the rock which could or would have been so dug, mined, and removed. There must be deducted the value of the rock dug elsewhere during the period of the injunction. Apart from every other consideration, it is manifest that no satisfactory conclusion can be reached in this way. Of all operations in the world, those of mining are the most varying and uncertain, even when the mineral-bearing strata are or can be exposed to the sight. The mining operations in the present case are in a broad estuary, of deposits of phosphate rock in the bed of its waters, not in one place, but in many places, varying in surface, in depth, in quality, requiring careful search and experiment, out of sight. The river itself is near the ocean, is easily affected by the winds and weather, constantly presenting obstacles to continuous or successful working. No man can say with certainty how many days' work can be done in any given year or parts of the year, how much more or less rock of constant quality can be dug in one or more years successively, or whether the success of one year can be any precedent or test of another, or whether the same money result would have followed. Dealing thus with things in their nature uncertain or changeable, the problem is difficult,—impossible of solution. It requires that every fact must be and remain the same. None of them can be altered without disturbing the relation of every other fact. To use the language of the counsel for the Coosaw Mining Company, who has aided the court with his able argument:

"If we change the position of a single pawn, we change the position of every other piece on the chessboard. If we touch the kaleidoscope ever so lightly, the colors and forms of the picture are at once altered. The Coosaw river is not of uniform depth, nor is the rock uniformly located, nor of uniform thickness, nor of uniform quality. It is impossible to locate from day to day upon the surface of the water exactly on the same spot. If it is true, as has been said, that every stroke of a miner's pick upon land is but an experiment, every dip of a dredge's bucket is, still more, but a trial stroke. It is impossible to say that one would certainly have struck on the same spots, produced the same quality of rock, and found it of the same value, in 1891 as in 1892."

But, if this difficulty be overcome, then the defendants seek compensation for a loss of estimated profits. The defendants were already engaged in mining operations under their license to dig, mine, and remove in the navigable streams. They continued their operations without interruption. Their present claim is based upon the idea that but for the injunction they could have mined in Coosaw river, have secured more rock than elsewhere, and might have sold the rock at a profit. Compensation for the loss of this profit they now seek.

Even in actions for breach of contract, the profits of the disappointed enterprise do not, as a general rule, enter into the measure of damages. The profits must be the direct and immediate fruits of the contract; part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for. Masterton v. Mayor, etc., 7 Hill, 69. No objection must be capable of interposition arising from elements of uncertainty or remoteness in estimating them. Howard v. Manufacturing Co., 139 U. S. 199, 11 Sup. Ct. 500. The profits must be reasonably certain, and not governed by a peradventure. Morgan v. Negley, 53 Pa. St. 153. They must not be remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. U. S. v. Behan, 110 U. S. 339, 4 Sup. Ct. 81. The profits must not be too contingent or speculative in their nature, and too dependent upon the fluctuations of the market and the chances of business to enter into a safe and reasonable estimate of damages. Masterton v. Mayor, etc., supra. Nor when the evidence of anticipated profits is all in, based upon production and sale of product, must the uncertainty remain whether the estimated results would follow or not. Lehman v. McQuown, 31 Fed. 138, 140. Perhaps the best way of illustrating the rule is by instances.

In U. S. v. Behan, supra, a contract had been made with the government for the performance of a piece of work at a fixed sum. The contractor knew the cost of his material and of his labor, and the time within which the work was to be performed. By deducting this cost from the sum certain contracted to be paid him, he knew what his profit would be. This profit was the direct and immediate result of his contract. The government rescinded the contract, and the profits were allowed as an element of damage.

In Lehman v. McQuown, supra, a receiver had been appointed after an injunction, who had taken possession of a stock of goods, and had sold them, pending the injunction. This was afterwards set aside, and an action brought against the party at whose instance the injunction was issued. A claim was made for the loss of profits on the goods sold by the receiver. They were not allowed. Judge (now Mr. Justice) Brewer says:

"Most of the testimony is the opinion of witnesses as to how much could have been made by Mrs. McQuown carrying on the business by herself. If she had conducted the business with a number of hands, she might have made profits on their work. She might have disposed of the entire stock. But could she? Was that a season in which there was such a demand that any person could have disposed of the property more rapidly or successfully than the receiver? * * * To award damages upon the belief of witnesses that, if the owner held the property, she could have managed it to more profit, is entering on a sea of speculation."

The distinction between these cases is this: In the one case the gross result of the work under the contract was a sum fixed absolutely. The cost of the work could be fixed with something like certainty. In the other case the gross result of the work was speculative, contingent, dependent upon the fluctation of the market and the chances of business. Upon this ultimate result depended

entirely the profit. This was too remote and contingent to affect the question of damages.

What are the facts here? The Coosaw Mining Company prepared and put on the market nearly all the Carolina phosphate rock produced from beds of navigable streams. The market for this rock was in Europe, and it may reasonably be presumed that great care was taken that the market should not be glutted. Under these circumstances, the rock commanded a certain price. If the injunction had not been interposed, and if the defendants and all others possessing a general license had gone into this territory and had produced this rock, the inevitable result would have been an overstocked market, and decline in the price of rock. This is not conjecture or theory. The experience of the first year after the injunction was dissolved demonstrates it. Besides this, the immense valuable beds of phosphate rock recently discovered, and then being worked, in Florida, began to affect prices in the market. Who can say what profit under these circumstances defendants could have made,—whether they would have made any at all? Can anything be more contingent and speculative in its nature, more dependent upon the fluctuation of the market, more exposed to the chances of business? How can the damages, based on a loss of profits, be safely and reasonably estimated? The testimony offered in itself shows how uncertain this result is. It leaves the price of rock in 1891 most uncertain, the highest estimate being 10 to $10\frac{1}{2}$ pence at the date of the injunction, rapidly falling in a few months to 7 to $7\frac{1}{2}$ pence; and there is no evidence whatever that there was such a demand as would have taken up all the phosphate rock which could have been produced in that year.

This case has thus far been discussed upon the merits. Looking into the report of the special master, with the testimony, there appears a fatal defect of proof. None of the witnesses speak as of their own knowledge. Two of them refer to books of a private corporation, not kept by themselves,—books in existence, and not produced. The third speaks of reports and extracts from customhouses and trade reports, of facts of which he knows nothing of his own knowledge. As books of a private corporation, they would not themselves have been evidence as against third parties. Phil. Ev. 319; 1 Greenl. Ev. 493; Town of Darlington v. Atlantic Trust Co., 16 C. C. A. 28, 68 Fed. 854. They could have been used to refresh the memory of the person who made them. The case quoted by the counsel for the defendants as showing exceptions to the general rule do not sustain him. In Insurance Co. v. Weide, 9 Wall. 677, the document admitted in evidence was a copy of an original paper destroyed by fire, the correctness of the copy having been proved by the persons who made it. In Robson v. Logging Co., 61 Fed. 893, the original books were produced, and the parties concerned with them examined as witnesses. In Railroad v. Warner (Tex. Civ. App.) 29 S. W. 503, a witness (the general manager of a railroad company) testified as to what sum had been expended during the receivership in betterments on the road, how much of this (about) was contributed by stockholders, and how much (about)

was paid by the receivership. Objection was made to the evidence, but it was admitted, because the witness also testified that the funds to a certain extent passed under his control. The issue in that case was whether the net earnings of the receivership were spent in betterments, and to that question the witness could answer of his own knowledge.

This opinion has already grown to too great length. Upon the question underlying the proceeding, some expression of opinion should be given. Damages are not necessarily awarded upon the dissolution of an injunction. 1 Spell. Extr. Relief, § 956; 10 Am. & Eng. Enc. Law, p. 997, note.

The rule is well stated in Smith v. Kuhl, 26 N. J. Eq. 97:

"That the injunction was dissolved is not, of itself, evidence that he was not equitably entitled to it, and though it may have been improvidently granted, and for that cause be dissolved before answer, that will not, if the case is fairly presented by the bill and verification, entitle the defendant to whom it is given to look to it for damages." "But, if the application be actually or presumably mala fide,—as, for example. if the bill present grounds for relief by injunction which have no existence, or distort or falsely color facts, or omit facts in the knowledge of the complainant, or of which he might and in fairness ought to have informed himself, and which would have had an important bearing against granting the injunction if stated in the bill; in short, if the application be disingenuous, mala fide, or made without due regard to the rights of the court or the defendant in the application,—the complainant is to be regarded as not having been equitably entitled to the injunction. A complainant may come into court for a discovery, and on that ground pray an injunction. If the discovery be made, and the result be adverse to him, and the injunction therefore be dissolved, he may, nevertheless, have been equitably entitled to the injunction. The object of the rule is to secure bona fides in the application, and to provide indemnity to the party enjoined, against the effects of an injunction unfairly obtained."

This seems to be the rule also in South Carolina. Moorer v. Andrews, 39 S. C. 429, 17 S. E. 948. It certainly has the sanction of the supreme court of the United States in Russell v. Farley, 105 U. S. 433, affirmed in Meyers v. Block, 120 U. S. 214, 7 Sup. Ct. 525.

In the case before the court the complainant had been in the enjoyment of a valuable franchise, under an act of the general assembly. The terms of this act were sufficiently obscure to create in the minds of eminent lawyers grave doubts as to its construction. When the rights claimed by the complainant under this act were assailed, they came promptly, and asked the adjudication of the court. No facts were concealed. No change in the facts was developed by the pleadings. A pure question of law—the construction of an act of assembly—was the sole issue. At the time of the application for injunction, the complainant had been enjoined in the state for asserting or exercising the rights claimed. The defendants, under cover of this, were about to proceed as if such rights did not exist. Every consideration of equity demanded that, until an authoritative adjudication of the point in issue, matters should remain in statu quo. The defendants were not put at any disadvantage by reason of the enforced disuse of the plant prepared for the purpose of mining in Coosaw river, nor for the loss

of idle capital. They continued to employ their capital and their plant in the same operations for which this capital was raised and the plant obtained. No delay was interposed in the preparation, trial, and decision of the matters in issue. The final decision recognized the gravity of the issue, the doubt as to the question involved; and the solution of this question was reached by giving the state the benefit of the doubt. Under all these circumstances, the rules laid down can safely be followed, and the conclusion reached that this is no case for damages beyond the costs of suit.

With regard to the question of laches, this is not a case in which this doctrine can be applied. There has been delay, but this has already been excused. Coosaw Min. Co. v. Farmers' Min. Co., 67 Fed. 31. "Laches is not, like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced; an inequity founded upon some change in the condition or relations of the property or the parties." Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 875. There is no evidence in this record of any such change in the condition or relations of the property or parties. It is true that the Coosaw Mining Company, the principal on the bond, has ceased operations, and has gone out of business. But the Coosaw Mining Company is not a corporation. It is or was a joint-stock company, and the liability of its members and their duty to protect their sureties, continue unimpaired.

Let an order be prepared in conformity with this opinion.