# CINCINNATI SIEMENS–LUNGREN GAS ILLUMINAT-ING COMPANY *v.* WESTERN SIEMENS–LUNGREN COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 193.    Argued January 5, 8, 1894. — Decided March 5, 1894.

The owner of an exclusive right to sell, place, and operate a patented invention within the limits of a State, conveyed to another party the like exclusive right in certain specified counties in that State, and agreed that during the period covered by the licenses and patents, the grantor would not knowingly sell or permit others to sell the patented goods within those counties, and further, that the grantor would supply the patented articles to the grantee on specified terms and conditions. The contract also guaranteed that the patented articles so supplied should have a life service of five years, and the grantor agreed to defray the expense of incidental repairs necessary thereto. The grantor then assigned all its rights and interest in this contract to a third party. The grantee continued to order the patented articles, as wanted, from the grantor, and the assignee supplied the goods as ordered and they were accepted. The assignee sued the grantee to recover the value of the goods so delivered. The grantee denied all liability and set up as counter claim, a claim for damage by reason of sales of the patented article in the territory covered by the license. *Held,*

(1) That the defendant, having accepted the goods from the plaintiff, was bound to pay for them;

(2) That his liability for them was to be measured by the contract price, and not by the market rate;

(3) That with reference to the sale of the patented articles in the licensed territory, the *scienter* was an essential part of the agreement, and, in the absence of proof of actual knowledge of the sale, by the plaintiff, the defendant could not recover on his counter claim;

(4) That as to sales which were shown to have been made with the plaintiff's knowledge, the measure of damages was the plaintiff's profits, and not the profits which the defendant might have made;

(5) That the defendant could recover, under the agreement as to the life service of the patented articles supplied to him, only for such repairs as he had been obliged to make, and not for estimated repairs during the remainder of the period.

On February 25, 1889, the defendant in error, a corporation of the State of Illinois, commenced its action in the Circuit Court of the United States for the Southern District of Ohio to recover from the defendant, a corporation created under the laws of Ohio, the sum of $6922.64 for goods and merchandise. The defendant appeared and filed an answer and cross petition. A trial was had before a jury, which, on February 10, 1890, returned a verdict for the plaintiff in the sum of $5752.34. This amount was reduced by the plaintiff, in accordance with the opinion of the court, by the sum of $127.90, and for the balance, with interest, a judgment was entered. To reverse such judgment defendant sued out a writ of error from this court.

*Mr. J. W. Warrington* for plaintiff in error.

*Mr. Lowrey Jackson* for defendant in error.

Mr. Justice Brewer delivered the opinion of the court.

On November 9, 1887, the Siemens-Lungren Gas Illuminating Company of Chicago, a corporation of Illinois, which had acquired by contract from the Siemens-Lungren Company, of the State of Pennsylvania, the exclusive right and privilege of selling, placing, and operating in the State of Ohio the patented regenerative and other gas lamps, appliances, and fixtures, made, owned, or controlled by the Pennsylvania corporation, entered into a contract with certain individuals, which contract was immediately thereafter transferred by them to the defendant company, giving the like exclusive rights for the counties of Hamilton, Butler, and Montgomery, in the State of Ohio. This contract specified the terms and conditions on which the Chicago company would supply the articles for sale and use in those counties. The Chicago corporation afterwards transferred all its franchises and property, including its rights and interest in this contract, to the plaintiff. The Ohio company carried on its correspondence, and sent its orders for goods to the Gas Illuminating Com-

pany, and, though notified of the transfer to the plaintiff, declined in its letters to recognize such transfer. At the same time it received the goods, and did not return them; and received them knowing that they were sent by the plaintiff. Upon this the defendant invokes the rule laid down in *Arkansas Valley Smelting Co.* v. *Belden Mining Co.*, 127 U. S. 379, and insists that the contract was of such a nature that it could not be assigned by the Gas Illuminating Company to plaintiff without the consent of defendant, which consent was positively refused. But that doctrine has no application under the circumstances of this case. Defendant could not accept these goods from the plaintiff, and then refuse to pay for them. It is immaterial whether there was an assignment from the Gas Illuminating Company to the plaintiff or not, or whether, if there was one, it was ever assented to by the defendant or not. When the defendant ordered the goods from the Gas Illuminating Company, and the plaintiff forwarded the goods upon that order, the defendant might have returned them, and declined to have any dealings with the plaintiff; but it could not accept the goods and use them, and then say it never ordered the goods from the plaintiff, never had any contract with it, and never assented to any assignment to the plaintiff of its contract with the Illuminating Company.

Of course, if the plaintiff undertook to furnish goods on the order of the defendant — an order based upon a contract between the defendant and the Gas Illuminating Company — it furnished them ubject to all the terms of that contract, and the defendant may rightfully invoke any stipulation thereof as a defence in whole or in part to the action.

Another question arises on these facts. The contract hereinbefore referred to contained this clause:

" That during the entire period covered by the licenses and patents now owned by the said Siemens-Lungren Company, or which may hereafter be acquired on improvements and reissues, the said Siemens-Lungren Gas Illuminating Company will sell exclusively to said parties of the second part for use in the counties before named all the burners, fixtures, and

appliances, made by said Siemens-Lungren Company and will not knowingly sell or permit other parties to sell for use in said territory any burners, lamps, or goods made, owned or controlled by said Siemens-Lungren Company, but will, upon the contrary, to the best of their ability, prevent the sale of any such articles for use within the territory named to any other than the parties of the second part, their successors or assigns."

There was testimony showing that after the execution of this contract the Middletown Gas Company purchased nine lamps from the plaintiff, and one hundred and twenty-two lamps from the Pennsylvania corporation. Middletown, where this gas company was located, is in Butler County, Ohio, and within the limits of the territory sold to the Cincinnati parties. There was no testimony tending to show that the original Chicago corporation, or this plaintiff, knew of the sale by the Pennsylvania corporation to the Middletown Gas Company. On the contrary, the testimony of plaintiff's two principal officers was that such sale was wholly unknown. Upon this failure to show any knowledge of the sales made by the Pennsylvania corporation the court struck out all the testimony as to such sales. In reference to the sale of the nine lamps by the plaintiff, the court ruled that it was a technical breach of the contract, and charged the jury to allow to the defendant as damages, the profits received by the plaintiff from such sales. There was no direct testimony that the plaintiff was aware at the time of the sales of these nine lamps that Middletown was within the territory which had been sold to the Cincinnati parties, and the letters of the secretary and president of the plaintiff company state that the sales were made inadvertently and in ignorance of that fact, yet the sales were held by the court to be in direct violation of the terms of the contract, and, therefore, giving a right to the defendant to damages. The contention now is, that the court erred in restricting the damages to the profits made by the plaintiff, and it is insisted that the defendant was entitled to recover what it would have made had it sold and placed the lamps in Middletown at the prices at which it was so selling

and placing them, if not to a larger sum which the jury might estimate were the damages resulting from this interference with its monopoly in the purchased territory.

We cannot concur in these views, and are of opinion that the rulings of the trial court were correct. With reference to the sale by the Pennsylvania corporation, the stipulation in the contract is that the Chicago company " will not know-ingly sell, or permit other parties to sell, for use in said territory, any burners, lamps," etc. The scienter is an essential term in this covenant. There is no presumption and no evidence that the original Chicago corporation or the plaintiff knew what the Pennsylvania company was doing, and if they did not know of such a sale, the fact that one was made involved no breach of the contract.

Neither was the defendant entitled to any other damages by reason of the sale by the plaintiff than the profits which the latter received. There is no presumption that the Cincinnati company would have been able to sell or place any lamps in Middletown at the prices it demanded. On the contrary, the testimony of the president of the defendant company is that the Middletown company refused to deal with it, and it is against all the rules in respect to damages for a breach of contract to give to the defendant the profits of a sale which it did not make, and which there is no reason to believe it ever would have made. There is no pretence of any wanton and wilful breach by the plaintiff; nothing that suggests punitive damages, or that shows wherein the defendant was damnified other than by the loss of the profits which the plaintiff received. Pass beyond that, and there is only a domain of speculation — a mere guess as to what might have happened. The case of *Seymour* v. *McCormick*, 16 How. 480, 486, 490, is in point. In that case the trial court, among other things, charged the jury as follows :

" The general rule is, that the plaintiff, if he has made out his right to recover, is entitled to the actual damages he has sustained by reason of the infringement, and those damages may be determined by ascertaining the profits which, in judgment of law, he would have made, provided the defendants had not interfered with his rights.

" That view proceeds upon the principle, that if the defendants had not interfered with the patentee, all persons who bought the defendant's machines, would necessarily have been obliged to go to the patentee, and purchase his machine. That is the principle on which the profits that the patentee might have made out of the machines thus unlawfully constructed, present a ground that may aid the jury in arriving at the damages which the patentee has sustained."

But this court was of a different opinion, saying :

" Actual damages must be actually proved, and cannot be assumed as a legal inference from any facts which amount not to actual proof of the fact. What a patentee ' would have made, if the infringer had not interfered with his rights,' is a question of fact and not ' a judgment of law.' The question is not what speculatively he may have lost, but what actually he did lose."

It is true that that was an action for an infringement, and this for a breach of a contract, but still the rule of damages is the same. Actual damages is what the law gave in case of an infringement, *Birdsall* v. *Coolidge*, 93 U. S. 64; actual damages is all the law gives in case of a breach of contract. Indeed, the real difference between that case and this is not so great as would be suggested by a description of the respective causes of action. For here, under the contract made by the plaintiff's assignor with the Cincinnati parties, the defendant became vested with a monopoly of sales within the prescribed territory of like nature to the monopoly given by the government for the whole territory of the United States whenever it issues a patent ; and the act of the plaintiff in making a sale within that territory was an infringement similar to that of a sale of a patented article made within the limits of the United States in defiance of the rights of the patentee. Nevertheless, it must be conceded that in the case at bar there is technically a claim for a breach of a contract, and it is undeniable that in some cases the profits that would have been made are proper elements of damage in such an action. This matter has been recently considered by this court in *Howard* v. *Stillwell & Bierce Manufacturing Co.*, 139 U. S. 199, 206, from the care-

ful opinion of Mr. Justice Lamar, in which case we quote as follows:

"The grounds upon which the general rule of excluding profits, in estimating damages, rests, are (1) that in the greater number of cases such expected profits are too dependent upon numerous uncertain and changing contingencies to constitute a definite and trustworthy measure of actual damages; (2) because such loss of profits is ordinarily remote and not, as a matter of course, the direct and immediate result of the non-fulfilment of the contract; (3) and because most frequently the engagement to pay such loss of profits, in case of default in the performance, is not a part of the contract itself, nor can it be implied from its nature and terms. Sedgwick on Damages, 7th ed. vol. 1, p. 108; *The Schooner Lively*, 1 Gallison, 315, 325, *per* Mr. Justice Story; *The Anna Maria*, 2 Wheat. 327; *The Amiable Nancy*, 3 Wheat. 546; *La Amistad de Rues*, 5 Wheat. 385; *Smith* v. *Condry*, 1 How. 28; *Parish* v. *United States*, 100 U. S. 500, 507; *Bulkley* v. *United States*, 19 Wall. 37. But it is equally well settled that the profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into. *United States* v. *Behan*, 110 U. S. 338, 345, 346, 347; *Western Union Tel. Co.* v. *Hall*, 124 U. S. 444, 454, 456; *Philadelphia, Wilmington & Baltimore Railroad Co.* v. *Howard*, 13 How. 307."

Tested by the rules here laid down, it is obvious that the defendant is not entitled to recover as damages the profits which it would have received if it had made a sale of the nine lamps at its price to the Middletown Gas Company, for it is wholly uncertain that it would have been able to make such a sale. Indeed, the testimony of its own president is flatly to the contrary. It does not follow because a party makes a purchase

at a lower price that he would have bought the same article at a higher price. The price is the one thing which oftentimes determines the question of purchase or no purchase. It is true there may be cases in which a necessity compels the purchaser to have the article, and then if he cannot buy it at one price he must at another. But no such necessity appears here, and although the gas company did purchase the nine lamps at a particular price, it does not follow therefrom that it would have purchased them at any higher figures. On the contrary, it is reasonably certain that it would not.

Nor can it be assumed that profits, such as are claimed, were " within the intent and mutual understanding of both parties." It can hardly be presumed that the parties intended that the defendant should receive as damages for breach of the contract the profits of a sale which it could not make, rather than the profits of a sale that was made. There must indeed be some special circumstances before it can be inferred that parties intend that profits based upon a sale, which it is apparent could not have been made, should be the measure of damages. Actual damage will generally be assumed to be the intended measure of compensation, and all that defendant has shown in this case is that the gas company did buy at a given price. The profits at that price it lost by reason of the plaintiff's sale, and that is the only actual damage which appears from the transaction. We see no error in the rulings of the court in this respect.

A third question arises upon the following stipulation in the contract:

" That the said Siemens-Lungren Gas Illuminating Company guarantees the life service of any lamps furnished to be five (5) years, exclusive of any globes broken or other damage done through careless handling, and that it will defray the expenses of any incidental repairs which may be necessary to keep said lamps in good and serviceable condition during the period named. And that upon the expiration of said period of five years they will, if the parties of the second part so desire, guarantee that the said lamps will be guaranteed for an additional period of five years upon being paid the

additional sum of three (3) dollars for each lamp thus guaranteed."

There was testimony tending to show what repairs had been made by the defendant, and their cost, and the court charged the jury that they should deduct from the plaintiff's claim whatever amount the testimony disclosed to be the proper cost of such repairs. Of this no complaint is made, but in addition the defendant asked an instruction that the jury should take into consideration the probable repairs to said lamps for the balance of the period of five years, as guaranteed by said contract, which instruction the court declined to give. It also during the trial sustained an objection to the following question put to the president of the defendant company :

"Q. I will ask you to state whether or not, as the lamp grows older and remains in service longer, there is an increase in the cost and in the repairs ? "

Of these rulings the defendant now complains, and insists that where damages are recoverable under a contract, such as this, " to keep the patented articles in repair for a specified time, the recovery should be allowed for the whole time specified, and not merely up to the date of the trial."

A sufficient answer to this contention is that in the count in the cross petition, in which damages are sought to be recovered for a breach of this covenant, the only allegation of damage is in these words: " Defendant alleges that it has paid out for such repairs to lamps so purchased by it, including those stated in the account attached to petition, to date, the sum of sixteen hundred ($1600) dollars, no part of which has been repaid to it." The only claim, therefore, which the defendant made was for the sums which it had already paid out, and the inquiry was, therefore, properly limited to that which it claimed. The suggestion that at the close of the cross petition there was a general prayer for judgment against the plaintiff in the sum of $23,850 will not avail the defendant in this respect, because that prayer commences with the word " wherefore," thus referring to the prior allegations, and the sum thus claimed is merely the aggregate of the separate

amounts of damage alleged in the six different counts of the cross petition. It is unnecessary, therefore, to determine what testimony the defendant might have offered as to future repairs, if the claim in its cross petition had included them, or whether, if any such testimony had been received, the cost of such repairs could have been set off against the already due demand of the plaintiff.

Again, the fourth count in the cross petition, after referring to the agreement of the Chicago company to furnish defendant with the patented lamps of the Pennsylvania company, alleges that "it did furnish to this defendant a large number of lamps purporting to be said patented lamps furnished by said Philadelphia company, but which were in fact an infringement thereof, and of such poor quality as to be unfit for use. Upon trial of the lamps and the subsequent discovery of the infringements thereof, defendant was compelled to retire from use ninety-two lamps thereof which were in use, and they and those having remained unused became useless and worthless property. Defendant paid said Siemens-Lungren Illuminating Company of Chicago the sum of two thousand ($2000) dollars for said lamps, no part of which has since been paid, and that, by reason of its being compelled to remove the said lamps and the consequent loss of business, it has been damaged in the further sum of one thousand dollars."

It appears that, in January or February, 1888, the plaintiff forwarded to defendant one hundred lamps, and it is in respect to these lamps that the claim of damages set forth in this count arises. The testimony was conflicting as to whether these lamps were manufactured by the Pennsylvania corporation or in Chicago, and also to what extent, if any, their construction was defective, or a departure from the form of the patented lamp. It does appear, however, from the testimony of the defendant's president, given at the trial in February, 1890, two years after the purchase, that ten or a dozen of these lamps had been sold for $35 each, and were still in use, having been used by the purchasers for a year and a half or more; and the defendant's employé, who handled these lamps, stated that the trouble was only with the burner, and that

otherwise the lamps were all right. There was no direct testimony as to their value. There was no pretence that the defendant had ever tendered them back to plaintiff, or even that it made any complaint of them for many months after their receipt.

In respect to this matter the court charged that " the rule of damages in such a case is measured by the difference between the contract price and the actual value of the thing delivered." It is true that the court intimated that, according to its recollection, the testimony was silent as to the actual value, and said to the jury that, if that were the fact, the defendant, having kept the lamps, could recover only nominal damages, but an expression of opinion by the judge as to the scope or reach of testimony is, as is well known, no ground of error in the Federal courts. There was no arbitrary direction as to the amount which the jury should, or ought to, award, and the rule, as stated above, was more than once repeated. We see nothing in this of which the defendant can complain, and this, whether the cross petition in this respect be regarded as alleging a delivery of goods of a kind different from those contracted for, or of goods coming within the terms of the contract but defective in quality. Counsel insists that these lamps were absolutely worthless, and that under those circumstances there was no necessity of a return, or of an offer to return. We see nothing to justify any such contention, and an instruction based upon the hypothesis that these goods were absolutely worthless would have been in manifest disregard of that which is shown by even the defendant's testimony.

The final matter is this : In the latter part of July, 1888, plaintiff furnished defendant two hundred and fifty lamps. These lamps were fitted with solid metal burners instead of tube burners used in those theretofore delivered. The contract provided that the plaintiff should furnish the most approved form of lamps made by the Pennsylvania company, and the claim was, on the part of the defendant, that the tube burner was the only burner that could be used successfully in those lamps, that the solid burner was a failure, and that it

would cost $3 each to make the exchange. On the other hand, it was insisted by the plaintiff that the tube burner was the one first used; and that the solid burner was a later invention, and supposed to be an improvement, and so furnished in good faith. It does not appear that the burners had ever been exchanged, or that the defendant had paid any money for the purpose of making an exchange, nor was there any testimony showing how much less in value a lamp with the solid burner was than one with the tube burner. If the defendant never made an exchange of burners, and so never expended any money therefor, and sold the lamp with a solid burner for the same price as one with a tube burner, it is difficult to see how it was damaged, even if it be conceded that the tube burner is a better appliance than the solid burner. That is practically the state of the case, as shown by the testimony and the charge of the court. The defendant never changed burners; never paid the $3, and there was no testimony showing the value of the lamp with the solid burner, or how much less it was worth than one with a tube burner. It does not appear that the defendant ever sold a lamp for less price on account of the solid burner. In addition to all this, a letter from the Pennsylvania corporation (while not entirely clear in its language) seems to carry the idea that, as soon as its bill for two hundred and fifty lamps is paid, it will exchange burners free of cost.

These are all the questions of importance presented in the trial of this case. We see no error in the rulings of the trial court, and, therefore, the judgment is

*Affirmed.*