## OIL WELL IMPROVEMENTS CO. v. ACME FOUNDRY & MACHINE CO.*

Circuit Court of Appeals, Eighth Circuit. March 19, 1929.

No. 8274.

*Rehearing denied June 14, 1929.

STONE, Circuit Judge. The Oil Well Improvements Company secured a decree against the Acme Foundry & Machine Company, finding infringement of patent No. 1,-165,253 (Alfred G. Heggem) for an oil well casing head. That decree was affirmed by this court [2 F.(2d) 530], and the matter then proceeded to an accounting to ascertain profits and damages. For that purpose, reference was to a master who recommended recovery on three items: For profits of defendant, $4,000; for damages by reason of sales lost to plaintiff, $35,738.64; for damages because of loss through selling price reduction by plaintiff, $23,959—the second item was divided into two amounts, representing the loss before this suit was filed ($11,518.78) and after that time ($24,219.86). The court sustained exceptions to the report, set the findings aside, and ordered re-reference to the master to take additional testimony for "an ascertainment of the damages allowable to the plaintiff in this case under the rule as to what would have been a reasonable royalty to be paid by the defendant." The reason for this order was that the court deemed the evidence too indefinite and inaccurate to support the findings of profits and of damages. As he stated it: "The question is not that the plaintiff has sustained substantial damages, but is, rather, the difficulty, if not the impossibility, under which plaintiff labors in procuring evidence to establish the amount of damages sustained, to that degree of certainty required in the law." Additional evidence was taken and the court, determining that 15 per cent. was a proper royalty, entered a decree (upon that basis) for $5,029.48. From that decree this appeal is brought by the plaintiff below.

Broadly stated, appellant contends that the evidence before the master was sufficiently definite and accurate to support findings on profits and on damages (both as to lost sales and as to reduction in price) and that the findings made by the master in those respects should be upheld. As there are three separate items (profits, damages for lost sales and damages for price reduction) of recovery found by the master and as the evidence concerning each is naturally different, it is necessary to examine the evidence as to each of these items separately to ascertain if it be sufficient to support a finding thereon and, if thus found to be sufficient, whether the amount found by the master is correct under that evidence.

### Profits.

The parties have stipulated that the profits derived by defendant from its sales of the

Arthur C. Brown, of Kansas City, Mo. (A. J. Biddison, of Tulsa, Okl., on the brief), for appellant.

Luther Ely Smith and Rodney Bedell, both of St. Louis, Mo. (A. L. Berger, of Kansas City, Kan., on the brief), for appellee.

Before STONE, LEWIS, and COTTERAL, Circuit Judges.

infringing device were $4,000. The dispute as to this matter is whether such profits should be reduced by two items called "bad debts" and "goods on hand."

Appellee claims that it may charge against profits bad debts totaling $3,457.68. Of this total, it is claimed that $1,957.68 represents accounts due from the purchaser, B. F. Palmer, for whom appellee manufactured the device. If this sum represents loss actually incurred in connection with the manufacture or sale of this device by defendant, of course, it is a proper reduction of its profits in that business. The amount is not in dispute. The controversy is as to whether it arose from this business and is properly chargeable against it in an infringement accounting. The evidence is practically undisputed. The entire amount was charged on appellee's books under a heading "Palmer Lawsuit Expense." Of this amount, $1,421.50 was largely for legal fees, apparently, in connection with this suit. Obviously, such a charge in connection with this accounting is improper. The remaining $536.18 may or may not be proper but it is not shown by appellee to have been. This information was entirely within the control of the appellee. Its book entry was that it was for "Palmer Lawsuit Expense." That entry was not explained away by any witness for appellee. It was its duty to make that explanation and to show that such was a proper charge herein. It should not be allowed.

The balance of $1,500, entering into the bad debts total of $3,457.68, consists of the balance on a note executed by the Northwestern Supply Company of Casper, Wyoming (a purchaser from Palmer), which, it is claimed, was assigned by Palmer to appellee. Originally for $2,000, Palmer had paid the interest and $500 thereon to appellee. This item appears in appellee's books only under the heading "Palmer Lawsuit Expense." However, the general manager of appellee testifies definitely that "Palmer turned that note over to us towards his account and we credited his account with that at that time, and put it in the notes receivable." The evidence tends to show the note has little or no value. It is a proper item of deduction herein. As there may be value therein, this item should be allowed in reduction of profits on condition that appellee deposit this note, legally assigned to appellant, to satisfy the judgment herein to the amount of $1,500 thereof.

As to "goods on hand," the contention is that the manufacturing cost of casing caps and parts (less junk value), which were on hand when the opinion of this court was handed down affirming the decree of infringement, should be deducted from the profits—in the sum of $2,472.95. There is no dispute as to the existence of this left over stock nor as to its value as above. The controversy is as to the propriety of allowing it as a deduction. This contention is settled adversely to the claim of appellee by Crosby Steam Gage & Valve Co. v. Consolidated Safety Valve Co., 141 U. S. 441, 12 S. Ct. 49, 35 L. Ed. 809. There the infringement was in the manufacture and sale of valves. The infringer claimed a deduction against profits for certain valves which had been made experimentally and later destroyed and others which had been defective and returned by customers and destroyed. The infringer there stated that the claim "is for this actual loss so sustained, decreasing their profits, which they now ask to have allowed. The loss is inseparable from their whole valve business and belongs to it." Page 456 (12 S. Ct. 54). That claim seems analogous to the one made here. As to that claim, the court (page 457 [12 S. Ct. 55]) said:

"As for the contention that the destroyed valves ought to form a credit against the profits actually realized by the defendant on other valves, it is sufficient to say that the only subject of inquiry is the profit made by the defendant on the articles which it sold at a profit, and for which it received payment, and that losses incurred by the defendant through its wrongful invasion of the patent are not chargeable to the plaintiff, nor can their amount be deducted from the compensation which the plaintiff is entitled to receive."

Also see Metallic Rubber Tire Co. v. Hartford Rubber Works Co. (D. C.) 245 F. 860, 864; Decker v. Smith (D. C.) 225 F. 776, 781.

A summary of the above determination of profits is as follows: The finding of the master is sustained for $4,000, subject to the right of appellant to satisfy the same to the extent of $1,500 upon legal assignment of the Northwestern Supply Company note.

### Notice.

The damages spring from two items, different in character. There is one contention common to both; that is, when should the period for estimating the damages begin? This depends upon the time of notice to the infringer. The appellee contends that no notice was given by marking the patented article as required by section 4900, R. S. (35 USCA § 49), and, therefore, no recovery

could be had for the period before this action was filed. Also, that the burden of proof is on appellant to show notice. It is certainly true that such burden of proof is on appellant. It is equally true, as impliedly conceded by appellee, that notice may be given otherwise than by the statutory method. The statutory method is merely supplemental—amounting to "legal" notice, analogous to that of recordation statutes. The essential matter, where the statutory method is not used to supply the deficiency, is actual notice to the infringer that the product of the patentee is patented. Here the master and the court concurred in finding the existence of this actual notice. The evidence not only justifies, but it compels such a result. This actual notice existed before appellee began any manufacture or sale of the infringing device. Therefore it is liable for profits and damages, covering the entire period of the infringement.

## Lost Profits.

■ As said above, the damages, claimed and found by the master, are of two kinds. One of these is the loss in its profits which appellant would have made had the infringing devices not been on the market. There is no presumption that appellant would have sold its devices to those who purchased the infringing articles. Seymour v. McCormick, 16 How. 480, 490 (14 L. Ed. 1024); Cincinnati Siemens-Lungren Gas Co. v. Western Siemens-Lungren Co., 152 U. S. 205, 14 S. Ct. 523, 38 L. Ed. 411. The question is, therefore, whether appellant sustained its burden of proof and showed with sufficient legal certainty that it would have made the sales, or any of them, made by the infringer, had the infringement not been on the market.

■ The pertinent evidence is as follows: The device has a limited use, and therefore market, because its purpose is to control the flow from gas wells which gush up oil in large quantities and with much force. Until the entry of this infringement, appellant marketed the only device which had met with favor. It supplied this demand exclusively. Its prices were fair. This infringement was appellant's sole competition. The infringement was marketed in a part of the territory covered by appellant. The construction of the two devices differed, substantially, in but one respect—the infringement contained two openings for the escape of oil, appellant's device had one opening. Some purchasers thought the two openings a decided advantage and, because thereof, bought the infringement; some thought two openings a

detriment and would not buy it; others saw no difference between the two devices and were influenced by price alone. Obviously, there could be no recovery of such lost profits on account of sales to those who bought because of supposed superiority of the infringing device. As to those who thought two openings a detriment, no sales were made of the infringement. Appellant is, therefore, confined to those who were influenced by price alone. The cost of either device was negligible in comparison to its saving to the customer so it may be assumed, practically to a certainty, that those of that class who bought the infringement would have bought appellant's device (it being the only other one on the market) if they had not bought the infringement. It is incumbent upon appellant to show the number of infringing devices sold to this class of buyers. The evidence shows 128 caps sold to that class (26 to the Gypsy Oil Company, 50 to the Sinclair Oil and Gas Company, and 52 to the Carter Oil Company). There is no evidence to challenge that of appellant that on the 763 infringements sold its lost profits would have been $35,738.64, or an average of $46.84 per single device. At this rate, 128 devices would represent lost profits of $5,995.52. To that extent, and to that alone, the proof sustains the claim for this item of damages.

## Reduced Prices.

■ The second item of damages claimed is for loss because of reduced price on some of the devices sold by appellant. Besides the evidence outlined under "Lost Profits" above, it was shown that, until the infringement came into the market, appellant had certain prices which were fair and acceptable to the buyers and that it completely supplied the demand. After the infringement came on the market, appellant was compelled by this competition and was induced by that alone to reduce its prices in order to save its business. As soon as the infringement ceased, it restored and has maintained its former prices with satisfaction to the trade. We think this evidence makes a clear case of loss occasioned solely by this infringement. The amount thereof is definitely ascertainable—in fact, is merely a mathematical problem involving the two prices and the number of devices sold at the reduced price. This amount is $23,959, for which recovery should be allowed.

## Summary.

The decree should be and is reversed, with directions to enter recovery for $33,954.52 (profits $4,000, lost profits $5,995.52, loss

from price reduction $23,959) with the privilege to appellee to satisfy $1,500 thereof by a legal assignment and delivery to appellant of the note for $1,500.