**FOARD v SEVERCOOL** et

Ohio Common Pleas, Lucas Co

Decided Jan 24, 1933

Smith, Beckwith, Ohlinger & Froelich, Toledo, and Gustavus Ohlinger, Toledo, for plaintiff.

Brown & Sanger, Toledo, and Otto H. Spengler, Toledo, for defendant.

## OPINION

By IRVING CARPENTER, J.

This is an action for money only, but during the trial the jury was waived and discharged and the cause submitted to the court. There is no dispute as to all of the facts which seem to the court of importance in the case.

November 20, 1915, George P. Waldorf, the owner of what is now Hotel Waldorf leased it to defendant Earl P. Severcool and one John J. Mills.

June 19, 1916, Severcool and Mills subleased a part of the Hotel to plaintiff Foard.

Later Severcool and Mills assigned their lease to Severcool and Edmonds a partnership composed of the defendants Earl P. Severcool and Eldon B. Edmonds.

March 29, 1917, Severcool and Edmonds surrendered their lease and in lieu thereof The Waldorf Realty Co. which had succeeded George P. Waldorf as owner of said Hotel, leased the same to The Hotel Waldorf Co. a new corporation, of which Severcool and Edmonds were directors, officers and chief stockholders.

June 7, 1918, Earl P. Severcool and Eldon B. Edmonds, as individuals, entered into a contract with Foard whereby his lease of June 19, 1916, was surrendered and he accepted a new and different lease from the Hotel Waldorf Co. which contract, after reciting the facts much as above stated, contained the following provision which is the basis of this action:

"Now, therefore, in consideration of the premises and of the sum of One ($1.00) Dollar, this day paid by each of the parties hereto to the other, the receipt whereof is hereby acknowledged, and of said Harry T. Foard making and entering into said new lease hereinabove mentioned and surrendering said old lease, said Earl P. Severcool and said E. B. Edmonds, hereby jointly and severally guarantee that said The Hotel Waldorf Company will promptly keep, perform and fulfill all· the terms, provisions and conditions of said lease between it and said The Waldorf Realty Company and of said lease between it and said Harry T. Foard on its part in said leases to be kept, performed and fulfilled, and further promise, covenant and warrant that said Harry T. Foard, his heirs, executors, administrators and assigns, having kept and performed all the terms and conditions of said new lease from said Hotel Company to him on his part to be kept and performed at the times therein provided for, said Harry T. Foard, his heirs, executors, administrators and assigns, shall peaceably and quietly hold, occupy and enjoy said premises to him leased by said new lease .from said Hotel Company during the term of said new lease, without any let, hindrance or molestation whatsoever by any person, firm or corporation lawfully claiming or to claim any right, interest or title in or to said premises thereby leased, or any part thereof."

Also on said date: June 7, 1918, said lease from the Hotel Co. to Foard for certain space in the basement of the hotel for restaurant purposes and a small office room on the mezzanine floor of the hotel, was actually executed, although it bore indenture date of November 22, 1917.

The head lease of the Realty Co. to the Hotel Co. was for a term of ninety-nine years, but contained an option to the lessor to cancel the lease should any monthly installment of rent remain unpaid for thirty days.· or should the Hotel Co. fail for such time in performance of various other covenants of said lease.

The lease of the Hotel Co. to Foard provided for a monthly rental of $227.18 and contained two provisions material here:

"2. The term of this lease shall begin on ·the date hereof and shall expire at midnight on the 21st day of September, 1931."

and

"9. Said lessee herein, for himself, his heirs, executors, administrators and assigns, further agrees that upon default, if any, of lessor herein, in carrying out and performing the terms of its said lease from said The Waldorf Realty Company, and the termination of said lease by reason thereof by the lessor therein, said lessor therein, The Waldorf Realty Company, at its option, may declare this lease terminated."

Severcool and Edmonds operated the Hotel up to 1920 when they sold their stock in the Hotel Co. to James Keenan and associates and severed all their connections with that business at that time.

November 18, 1925 Foard sub-leased to Orly K. Harvey all of the basement or restaurant space, and at a monthly rental of $370.00, the term to begin with the date of said sub-lease and expire at midnight September 21, 1931, the same time Foard's

lease from the Hotel Co. expired. The Harvey contract contained the following provision:

"Said lessee herein for himself, his heirs, executors, administrators and assigns, further agrees that upon default, if any, of The Hotel Waldorf Company, of Toledo, Ohio, in carrying out and performing the terms of its lease from The Waldorf Realty Company and the termination of said lease by reason thereof by said The Waldorf Realty Company, said realty company, at its option, may declare this lease terminated."

November 24, 1925, Harvey assigned his lease to D. F. Melhorn, and July 3, 1929 he in turn assigned it to the said The Hotel Waldorf Co. both assignments were:

"subject, however, to all the covenants, provisions, rents and conditions therein (meaning the Foard-Harvey lease) contained."

May 31, 1930, the Hotel Co. was in default in non-payment of rent for two months and of the December 1929 taxes and the Realty Co. cancelled said head lease dated March 29, 1917, and the Realty Co. and Hotel Co. entered into a written contract whereby the Hotel Co. agreed to such cancellation, and the details of surrender of possession to the Realty Co. were agreed upon. At that time defendant Earl P. Severcool took charge of the Hotel and has since operated it as manager for the Realty Co.

About June 12, 1930, by letter to Foard the Realty Co. formally notified him of the termination of the Hotel Co. lease, and also that it terminated his sub-lease from the Hotel Co. and his sub-lease to Harvey.

Foard had up to June 2, 1930, paid his rent: $227.18 to the Hotel Co. and on the execution of the sub-lease to Harvey he received one month's rent, $370, from Harvey, and thereafter from the Hotel Co. at the time he paid his rent.

June 2, 1930, he duly tendered the monthly installment of rent then due which was refused because of the termination of the Hotel Co. lease, of which he was at that time verbally informed. He also demanded payment of the rent he had been receiving: $370.00, which was also refused for the same reason.

Thereafter Foard continued to make some tenders of rent at the hotel, but all were refused. In the view the court takes of the situation existing after May 31, 1930, whether such tenders were made by Foard are unimportant.

The plaintiff, Foard, asks judgment against Earl P. Severcool and Eldon B. Edmonds for the difference in the monthly rental paid by him; $227.18, and that received by him: $370.00, from June 1, 1930, to September 21, 1931. In other words he seeks to recover the profit he would have made had not the Hotel Co. defaulted on its head lease thereby causing the termination of both his lease from that company and his sub-lease to Harvey. For this recovery he relies upon the provision of his contract with Severcool and Edmonds which is quoted above.

Service of summons was not had upon Edmonds, and the action has proceeded against Severcool alone.

No action was ever brought by plaintiff against The Hotel Waldorf Co. for the breach, if there was one, by it of any provision of its lease to him.

Even conceding the foregoing narrative of facts to be correct, the defendant asserts two defenses to the plaintiff's claim.

One that he does not have a right to sue upon the so-called "guaranty" contract, until he has exhautsed his remedies against, what he claims is the principal debtor, The Hotel Waldorf Company.

The other defense is, that, even if plaintiff does have the right to sue, he has sustained no damage that can be the subject of a legal recovery.

Looking to the first defense thus suggested, it is the opinion of the court that Foard had no redress against the Hotel Co. under his lease from it. While it is true it did expressly provide that the term should extend to "the 31st day of Sept. 1931." it closed with paragraph 9 hereinbefore quoted, by which the head lessor, the Realty Co. on default by the Hotel Co. was empowered to terminate not only the head lease but this one also, and that power was exercised by it June 1, 1930.

That lease contained no provision giving the lessee any relief on such termination by the lessee's default on the head lease.

Were this lease to be construed entirely alone it could be properly urged that a redress for the thus shortened term was implied, but when we examine the circumstances under which this contract was made it seems quite obvious no such right was contemplated. In the first lease, from Severcool and Mills to Foard a definite term of fifteen years was provided for, with no provision for its cancellation, ex-

cept on the default of the lessee. Here was a positive obligation on █ the lessors who were individuals, without any reservation as to term so far as they were concerned.

To obtain cancellation of that lease by Foard and as an expressed consideration therefor, the lease from the Hotel Co., was executed to Foard with its cancellation clause above quoted. At the same time, and as a part of the same transaction the so-called "guaranty" contract, quoted supra, was given to Foard by the defendants herein, Severcool and Edmonds. By this these individuals gave to Foard their "joint and several" personal obligations that he would enjoy the full term of his lease. To Foard it meant the individual and enduring responsibility of men he knew for the hazard of a corporate promise, with an express power of cancellation in it. By this a definite redress for the contingency of such cancellation and a shortening of his term was assured to him, and to that redress alone could he look after his lease had been terminated by the power it carried in its own very terms.

But what is Foard's measure of damages for the failure of the Hotel Co. to "keep, perform and fulfill all the terms, provisions and conditions of said lease" from the Realty Co. to the Hotel Co. and the lease from it to him?

A new light has been lit for us on problems such as this in the very recently published "Restatement of the Law of Contracts" as adopted and promulgated by The American Law Institute. Attention is called to the following sections:

"329. Where a right of action for breach exists, compensatory damages will be given for the net amount of the losses caused and gains prevented by the defendant's breach, in excess of savings made possible, if established in accordance with the rules stated in §§330-346."

"330. In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise it must be shown specifically that the defendant had reason to know the facts and to foresee the injury."

"331. (1) Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty.

(2) Where the evidence does not afford a sufficient basis for a direct estimation of profits, but the breach is one that prevent the use and operation of property from which profits would have been made, damages may be measured by the rental value of the property or by interest on the value of the property."

As to the proposition stated in §329, it seems clear that "gains" were "prevented" to plaintiff by the breach in question, and such "gains prevented" were the difference between $370.00 and $227.18, or $142.82 per month, which was his profit on his sublease.

The real problem in the matter at bar is whether such damage could have been foreseen by Severcool and Edmonds when they made that contract with Foard.

The classic expression of the rule by which damages are determined is expressed in Hadley v Baxendale, 9 Exch. 341, 156 Eng. Rep. 145.

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either arising naturally i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in. the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

The Restatement illuminates §330 by several illustrations and the first one we recognize as the facts in Hadley v Baxendale, supra. That case is cited in **Stranahan Co. v Coit, 55 Oh St 398, 405.**

The contract sued upon here contemplated the assignment of the lease, for it was agreed that Foard, "his heirs —and assigns, shall peaceably and quietly hold," etc. The lease also ran to Foard, "his heirs— and assigns," and it contained no limitation on alienation, either in whole or in part. In this respect it differed from the first lease from Severcool et al to Foard, for it could not be assigned without the written consent of the lessors. Thus the possibility of alienation by Foard was clearly in the contemplation of the parties

when the lease and so-called "guaranty" contract were made.

But was the possibility of profit to Foard as a result of such alienation in the contemplation of the defendant? Should he in 1918 "foresee" the boom of 1925 when the sub-lease to Harvey was made? Had the turn been the other way Foard would have been required to carry on at $227.18 per month regardless. Should he not have the benefit of the favorable contract he made in 1925? Times always have gone up and down, and surely in June 1918 when the World War was still in progress Severcool might well have contemplated any turn in business before September 1931, and several turns did come.

But it is urged that Foard lost nothing, therefore should not recover anything. "Losses caused" are not the only subject of damages, "gains prevented" may be the subject of compensation. §329 Restatement. The "injury" to Foard is one "that follows the breach in the usual course of events" and accordingly "there is sufficient reason for the defendant to foresee it." §330 Restatement.

It is urged that the "guaranty" contract only amounts to a covenant of quiet enjoyment to Foard, and that may be correct. Courts in this and other states have adopted conventional rules for the determination of damages in given cases, including the loss to a lessee of "quiet enjoyment."

The defendant contends that the rule by which plaintiff's damages are to be measured is the **difference** between the rent reserved in the lease and the actual net value of the leasehold estate, and in support of this cites **Michigan Mutual Life Ins. Co. v Sheridon, 11 Oh Ap 29.** That was a case where the lessee lodge was itself using the leased premises, but had also sublet to other lodges the quarters when not used by it. It is interesting to note that the Court of Appeals in discussing the damages arising from the breach and in applying that rule took into account the rentals to be received from such sub-tenants.

Damages from loss of profits in any such matter is largely a problem of evidence as is contemplated in §331 of the Restatement. (1) "Gains prevented" or profits, are allowed "to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (2) When this cannot be done then the rule claimed by defendant applies.

It is hard to conceive a case where there would be greater certainty of proof than in this case.

The subject of profits as an element of damages was very well stated by Justice Lamar in Howard v Stillwell, etc. Mfg. Co., 139 U. S. 199, 206; 35 L. Ed. 147, 150; and this was followed in Gas Co. v Western, etc., Co., 152 U. S. 200, 206; 38 L. Ed. 411, 413; and Anvil, etc., Co. v Humble, 153 U. S. 540, 549; 38 L. Ed. 814, 817.

Following this reasoning the finding must be for the plaintiff against the defendant Severcool for the amount prayed for in his petition, including interest, 13 O. Jur. 173. Exceptions may be noted for the defendant.