158 P.2d 295

## RATON WHOLESALE LIQUOR CO. v. BESRE.

### No. 4854.

Supreme Court of New Mexico.

March 20, 1945.

Rehearing Denied May 16, 1945.

Henry J. Hughes and Fletcher A. Catron, both of Santa Fe, for appellant.

Fred C. Stringfellow, of Raton, for appellees.

BRICE, Justice.

This action was brought by the appellees (wholesale liquor dealers) against the appellant (the operator of a night club at Tesuque, New Mexico) to recover upon an account for liquors alleged to have been sold by them to appellant. From a judg-

ment for appellees this appeal is prosecuted.

The question is whether the finding of the court that appellant purchased the liquor is supported by substantial evidence. The substance of appellant's testimony on the question follows:

Dan Massaroni, a salesman of appellees', testified in substance that he had called upon one J. Allen Fiske, a prospective customer, who had opened a "dude ranch" near Espanola, New Mexico. Fiske told him that he (Fiske) had made application for a retail liquor license, but it had not yet been granted; that he could not legally purchase liquor from a wholesale dealer. Some weeks later Fiske, although he had not obtained his license, gave Massaroni an order for liquors, regarding which Massaroni testified as follows:

"Q. Did you take an order there in June, 1941, for certain liquors to be delivered to Mr. Besre? A. Yes, sir.

"Q. Just tell what happened there? A. The whole story is this, that I had heard that Mr. Fisk was opening up a place of business and I ran up there to try to get the order, and at that time Mr. Fisk did not have a license but he said he had it applied for, and I took an order, and that same week I went up again to see about his license, and they said he was not in, and that took on for about three weeks and he wanted to open up for the fourth of July, and he said if it was alright to get this liquor to charge it to the fellow (appellant) until he got his license, and I said

that it was up to him to charge it, and he said that Charles Besre was a good friend of his, and I went into Santa Fe and I saw Charles Besre and he said it was alright to ship it, and I told Charles Besre it would be charged to him.

"Q. Did you tell Charles Besre whom you expected to pay the bill? A. Yes, sir.

"Q. Whom? A. Charles Besre."

He further testified that he delivered the liquor to Fiske, but stopped at appellant's place of business and told appellant that he had "a shipment" and that appellant told him "to go ahead and take it up there," that he then told appellant the liquor would have to be charged to him. That thereafter he presented a bill to appellant every week for six months, but that appellant would put him off by saying that he would see Fiske. That he told appellant "We have to have our money, the company is riding me." Appellant told him "just to see Mr. Fiske." He went to see Fiske, as he testified, "to get the money for Mr. Besre." Upon cross-examination he testified that the order was given by Fiske at the Fiske ranch. That he had heard at Espanola Fiske intended to open a night club and he went there and solicited the order and afterwards delivered the liquor to Mr. Fiske. He testified further that he was responsible for the shipment but at that time he had not been called upon to pay it. The order he took was in the name of Fiske. He testified further that he called about twice a month at the Fiske ranch

to collect the bill. That upon one occasion about six months after the sale, he called on Mr. Fiske to collect the bill and Mr. Fiske threatened to shoot him and that he did not wait to see whether he meant it.

This witness was recalled and testified that after Fiske had made his selection he (the witness) stopped and saw the appellant, showed him the order, and further, as follows:

"Q. What did he say about shipping it and about paying for it? A. He said to ship it and deliver it.

"Q. *Who was to pay for that order?* A. El Nido.

"Q. Who owns El Nido? A. Charles Besre.

"Q. Did you at any time charge anything to Mr. Fiske? A. No, sir.

"Q. Did you at any time have any bills to present to Mr. Fiske? A. No, sir.

"Q. Before you delivered this merchandise to Mr. Fiske did you stop by and see Charles Besre? A. Every time I got an order I saw him and he OKed it.

"Q. And before you delivered the order what did you do? A. I would see Charles Besre and he said to deliver it."

He testified that he had gotten three orders from Mr. Fiske and all had been OKed by appellant; "by telling him to ship it." He stated that appellant did not sign anything.

C. Vincioni, a member of the appellee partnership, testified that he had talked with the appellant at his place of business regarding the bill. He stated: "He (appellant) told me once 'I will have to collect a bill from Mr. Fiske and when I collect that bill I will pay it.' I said 'The Company is after me very strong for the money and I must have the money or file suit against you.' He said he thought he could get the money from the man he sold the merchandise to; the merchandise we sold to him." He testified that he sent a bill each week by his salesman to appellant.

Joe Fuschino testified that he was state manager for Seagram Distilleries in New Mexico, for which appellees were jobbers; that he heard a conversation between the witness Massaroni and the appellant some two years prior to the trial. That Massaroni presented a statement to appellant and told him "Mr. Vincioni is requesting I get this money on the Fiske account, and I would like to have something on it." That appellant said, "Give me a little time and I will speak to Mr. Fiske regarding it." That a short time before the trial he heard a conversation between Massaroni, appellant and appellee Matteucci, in which the latter asked appellant if it was all right for him to go up and try to collect the money for him (appellant) "and Charles Besre agreed to it."

Another of appellees' salesmen testified that he was present at appellant's place of business and heard a conversation between appellant and Massaroni "about an order of liquor that was to be delivered to a Mr. Fiske. It was to be charged to Mr.

Besre and delivered to Mr. Fiske who lives near Espanola, New Mexico." He testified to having heard a later conversation between the same persons, regarding which he stated: "It was agreed by Mr. Massaroni and Mr. Besre that the liquor was to be delivered to Mr. Fiske."

The material testimony introduced by appellant is substantially as follows:

Appellant testified that prior to the transaction in question he had seen Fiske but twice; that he never bought the liquor in question, nor did he receive it or request that it be delivered to Fiske, and never knew Massaroni was delivering liquor to Fiske. He received a statement of the account with a letter requesting payment, dated January 16, 1942, to which he replied as follows:

"It was quite a surprise to me to receive your letter of January 16th, informing me that I am your debtor to the extent of $943.86. I am sure there must be some mistake on the part of your company.

"I never received, or never placed such an order with your company.

"I wish that you would refer to your accounts in this matter, and I am sure that you will be able to locate the error, which I am positive has been made.

"Yours truly,

"Charles Besre."

To this letter appellees answered:

"Your letter of the 20th received.

"Your surprise at the fact that our books show a long past due balance on your account can hardly exceed ours that you have forgotten an order you gave us, which we shipped you in good faith, and which is still unpaid for. As we are short the goods we shipped you, we can hardly forget the transaction.

"Yours very truly,

"Raton Wholesale Liquor Company

"[s]   C. Vincioni

"General Manager."

Appellant further testified that he did not tell appellee Matteucci to see Fiske or collect the money for him; that he told appellee Vincioni to see Fiske, and that he (Vincioni) told appellant he would try to collect from Fiske.

Charlotte Marks testified that she was employed at the Radio Service Company in Santa Fe and that appellant was in her office in September or October 1941 and called Mr. Massaroni in and asked him regarding a bill he had received from appellees. Massaroni said that he knew that appellant had not ordered the liquor but that he (Massaroni) would take care of it, and requested appellant not to tell his employer about it.

J. Allen Fiske testified that Massaroni came to his ranch, and that he gave Massaroni an order for liquor, advising him at the same time that he (Fiske) had no retail liquor license; that he did not know Mr. Besre and had met him only twice; that nothing was said regarding the appellant; that he had bought and agreed to pay for the liquor; that Massaroni had been to see him many times in an attempt

to collect it. Much was said by this witness regarding this transaction, from which we infer he received the liquor and does not intend to pay for it.

The trial court's finding of fact challenged here is as follows:

"That the defendant is indebted to the plaintiff in the sum of $943.86 upon an account of goods sold and delivered by the plaintiffs to the defendant at his request at Tesuque, Santa Fe County, New Mexico, in the month of June, 1941. * * *"

■ Under a rule long established in this court, if we find in the record substantial evidence that supports this finding it will not be disturbed by us.

■ In the sense that it is contended a sale of liquor was made to appellant by appellees, the word "sale" means the passing of title and possession of property for money which the buyer pays, or promises to pay. State v. Colonial Club, 154 N.C. 177, 69 S.E. 771, 31 L.R.A.,N.S., 387, Ann. Cas.1912A 1079; 46 A.J. "Sales" Sec. 2.

The appellees' testimony regarding the alleged sale of the liquor to appellant may be reduced to the following facts: Appellees' salesman secured an order for liquor from J. Allen Fiske, who at the time was not possessed of a retailer's license authorizing him to make such purchase. Fiske stated to the salesman that if it was all right to get the liquor, to charge it to appellant *until he (Fiske) got his license.*

The salesman saw appellant who said that it was all right to ship the liquor. He told appellant that it would be charged to him and that he, appellant, was "expected to pay the bill." It does not appear from the record that appellant replied to this statement. Afterwards the salesman stopped at appellant's place of business and told him that he had a shipment and appellant said, "Go ahead and take it up there." The salesman then told appellant that it would have to be charged to him, to which it does not appear that appellant made reply. This is in substance what occurred, according to appellant's testimony, prior to the delivery of the liquor to Fiske. Did this constitute a sale to appellant?

■ If the appellant ordered the liquor and it was delivered to and accepted by him, he cannot escape liability because of his silence regarding payment at the time the order was made (Cincinnatti, etc., Co. v. Western Siemens-Lungren Co., 152 U.S. 200, 14 S.Ct. 523, 38 L.Ed. 411; Restatement of the Law of Contracts, Sec. 72; 1 Williston on Contracts, Sec. 91); and if appellant ordered the liquor to be delivered to Fiske upon appellant's direct (not collateral) promise to pay for it, then the credit was extended to appellant and he is liable to appellee and the contract is not within the statute of fraud. Pace v. Springer, 23 N.M. 586, 170 P. 879; Bunton v. Campredon, 24 N.M. 314, 171 P. 142; Davis v. Patrick, 141 U.S. 479, 12 S.Ct. 58, 35 L.Ed. 826; Johnson v. Bank, 60 W. Va. 320, 55 S.E. 394, 9 Ann.Cas. 893; 49 A.J., Statute of Frauds, Secs. 89 et seq.; and see annotations 15 L.R.A.(N.S.) 214.

■ We are of the opinion that there is no substantial evidence that proves the liquor in question was delivered to appellant or that the appellees agreed to deliver it to him. Notwithstanding statements of the witness Massaroni regarding his having taken the liquor by appellant's place of business, stating to appellant that he had "a shipment"; what was said at the time of the alleged sale and all the circumstances show that appellees were to deliver the liquor to Fiske, and they did so deliver it and took Fiske's receipt for it.

Also, appellant's evidence shows conclusively that the title to the liquor was intended to pass to Fiske upon delivery. He wanted it before the Fourth of July to serve to his guests on that date, so appellees' agent testified.

We are of the opinion that the finding of the trial court that a sale and delivery to appellant had been made, should be, and it is, cancelled.

We are moved to this conclusion not only because of the vague and unsatisfactory evidence from which a direct sale to appellant has been inferred, but because of the inherent improbability of an inference that appellant, without having been consulted regarding the order, should agree to pay absolutely for substantially a thousand dollars worth of merchandise to be given to a comparative stranger whom, the uncontradicted evidence shows appellant had met but twice.

It is obvious that much of the testimony given in this case is false, and that some of the material facts have been suppressed. It may be that at another trial the evidence will be such that a more satisfactory determination of the issues may be had.

The unusual circumstances surrounding this case satisfy us that this disposition of the case is correct. If it should be determined upon a second trial that the appellant did not purchase the liquor to be delivered to him, the question may arise as to whether the liquor was bought on appellant's credit to be delivered to Fiske, or whether the debt incurred was Fiske's and that appellant's promise to pay therefor (if made) was collateral.

■ If such questions should arise it is suggested that the character of the promise (whether original or collateral) does not depend wholly upon the expressions used. Regard must be had to the intention of the parties at the time the promise was made; and this intent must be inferred, not only from the expressions used, but from the situation of the parties, and all the other material circumstances attending the transaction. Johnson v. Bank, supra; Davis v. Patrick, supra.

The cause is reversed and remanded with instructions to the district court to grant a new trial, and to permit the parties to amend their pleadings if they are so advised.

It is so ordered.

MABRY, C. J., and SADLER and BICKLEY, JJ., concur.

LUJAN, J., did not participate.