618 P.2d 357

Susan **BENNETT**, Plaintiff–Appellant,

v.

**WESTERN SURETY COMPANY,**
Defendant–Appellee.

No. 12788.

Supreme Court of New Mexico.

Oct. 20, 1980.

Vernon D. Jones, Albuquerque, for plaintiff–appellant.

Keleher & McLeod, Peter H. Johnstone, Albuquerque, for defendant–appellee.

**OPINION**

FEDERICI, Justice.

This suit was brought by plaintiff–appellant, Susan Bennett (Bennett), in the District Court of Bernalillo County to recover damages from defendant–appellee, Western Surety Company (Western). Western is a surety company which provided a car dealer bond for Fred Cerra, doing business as Fred Cerra Auto Sales (Cerra). At trial, a stipulation of facts, certain exhibits introduced by Bennett, and the deposition of Orlando Olvera, were introduced into evidence. The trial court entered partial judgment for Bennett and partial judgment for Western. Bennett appeals that portion of the judgment in favor of Western. She presents two issues on appeal:

1. Whether Bennett is entitled to protection under a statutory automobile dealer's bond; and,

2. Whether the trial court failed to consider the deposition in evidence before it. We affirm the trial court.

Two transactions between Bennett and Cerra are involved. In April of 1977, Bennett purchased a 1977 Ford Thunderbird from Cerra. In another separate transaction on the same date, Bennett invested $5,000 in Cerra's business. In return, Cerra gave her a 60–day promissory note that called for payment by Cerra of $6,000 at the end of the 60–day period. As security for the note, Bennett took a manufacturer's statement of origin and a motor vehicle bill of sale on a 1977 Plymouth Sport, issued in blank by Cerra. Neither of these instruments indicated any assignment to Bennett. The Plymouth Sport was not delivered to Bennett at any time. At the end of the 60–day period, Cerra did not make any payment to Bennett. The trial court ruled that Bennett was entitled to recovery on the first transaction, but not the second transaction. The second transaction is the one before us on appeal.

At the time of this second transaction, Western was the bonding company for Cerra, pursuant to Section 64–8–6, N.M.S.A. 1953 (recodified in substantially the same

form at Section 66-4-7, N.M.S.A. 1978). The pertinent language of this statute states:

A. Before issuance of any dealer's license ... the applicant shall procure ... a corporate surety bond. ... *The bond shall be payable to the state for the use and benefit of the purchaser and his vendees*, conditioned upon payment of any loss, damage and expense sustained by the purchaser or his vendees, or both, *by reason of failure of the title of the vendor, by any fraudulent misrepresentations or by any breach of warranty as to freedom from liens on the motor vehicle.* (Emphasis added.)

In order to recover under the above statute, Bennett must show that she was a purchaser of the Plymouth Sport. She directs us to the Uniform Commercial Code, Section 55-1-201(33), N.M.S.A. 1978, for the definition of a purchaser as one "who takes by purchase." Section 201 states:

[I]n *this act*:

(32) "purchase" includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property. (Emphasis added.)

The above definition is very general and does not apply to the present transaction. It applies to suits brought under the Uniform Commercial Code. Here, we are controlled by a specific statute concerning bonding of automobile dealers. The bond statute is not preempted by the Uniform Commercial Code and it cannot be construed by reference to definitions contained in the Code. New Mexico has adopted the "usual and ordinary meaning" rule, *see State ex rel. Bird v. Apodaca*, 91 N.M. 279, 573 P.2d 213 (1977). The ordinary meaning of "purchaser," according to Black's Law Dictionary 1399 (Rev. 4th ed. 1968), is: "One who acquires ... personal property by buying it for a price in money; a buyer; vendee."

This Court has stated that "sale" means "the passing of title and possession of property for money which the buyer pays, or promises to pay." *Raton Wholesale Liquor*

*Co. v. Besre*, 49 N.M. 121, 125, 158 P.2d 295, 297 (1945). *See also Valdez v. Garcia*, 79 N.M. 500, 445 P.2d 103 (Ct.App. 1968), *cert. denied*, 79 N.M. 449, 444 P.2d 776 (1968).

Here, the record shows a check made payable to Fred Cerra Auto Sales in an amount of $5,000. In the lower left-hand corner of the check is written "For Inv." The testimony of Orlando Olvera, who wrote the check for Bennett, indicates that "Inv." is "Investment," abbreviated. In return for this check, Bennett received a "Manufacturer's Statement of Origin to a Motor Vehicle" indicating that Chrysler Corporation had shipped a new Plymouth Sport to a dealer in Wheeling, West Virginia. She received an "assignment" paper, which indicated the statement of origin was then transferred to "Quail Auto Sales, Inc., 1024 Taylor Ave., Pittsburgh, Pa." There was a second assigned to Cerra, but it was not executed. Bennett received a "Motor Vehicle Bill of Sale," signed by Cerra, and notarized. However, no purchaser was named in the bill of sale, nor was any dollar consideration stated, though there were blanks for these items on the form. Bennett also received what appears to be a properly executed and notarized promissory note from Cerra, promising to pay her $6,000 in sixty days, with interest from maturity at 12% per annum. She never obtained possession of the vehicle.

The issue here is whether there was substantial evidence before the trial court to support its findings that Bennett was not a purchaser of the Plymouth. *Knotts v. Safeco Insurance Company of America*, 78 N.M. 395, 432 P.2d 106 (1967); *Schall v. Mondragon*, 74 N.M. 348, 393 P.2d 457 (1964). The only evidence not previously set forth which could be relied upon to show that Bennett was a purchaser is in Olvera's deposition:

Q: [Bennett] explained she was giving Cerra the money to use in the business?

A: Uh-huh.

Q: What was to be her return from the $5,000 investment?

A: The [Plymouth] if he couldn't give her back the $5,000.

This evidence, which was before the trial court, clearly indicates that the parties intended the Plymouth to be collateral on a loan, rather than a purchase. While Bennett had documents of title, none of them were in her name. Bennett did not have possession of the vehicle at any time. She did not attempt to enforce any ownership rights in the vehicle for more than five months after she received the documents. There is substantial evidence in the record to support the findings of the trial court that Bennett was not a purchaser under Section 64–8–6.

In view of our disposition of this issue, it is not necessary for us to determine the other issues raised by appellant. The trial court is affirmed.

IT IS SO ORDERED.

EASLEY and PAYNE, JJ., concur.