### CARR v. UNITED STATES.

#### WISE et al. v. SAME (two cases).
#### Nos. 2198–2200.

District Court, W. D. Kentucky, at Louisville.

July 5, 1939.

E. E. Pendergrass, of Louisville, Ky., for plaintiffs.

Eli H. Brown, III, U. S. Atty., and James Garnett, Jr., Asst. U. S. Atty., both of Louisville, Ky.

SWINFORD, District Judge.

This is an action brought by land owners of Hardin County, Kentucky, against the Government to recover damages to them in their property and rights growing out of the ownership of that property, by reason of the establishment, construction or maintenance of Fort Knox, a military post contiguous to their property.

There are four tracts of land in question. The ownership of these four tracts of land and the number of acres in each is as follows: Robert E. Wise, Stanley Wise Ellis and Peyton L. Ellis, owners of one farm of 240 acres; Hilory Wise, 120 acres; Flora A. Wise, 120 acres; Henry H. Carr, 308 acres. The tracts of Hilory Wise and Flora Wise, husband and wife, are adjacent and are in reality one farm of 240 acres. All of the farms adjoin and the facts pertaining to damage are equally applicable. The farm of Henry H. Carr was purchased after the establishment of Fort Knox, but before it was known to be a permanent Army Post. By agreement of the parties all the actions are tried together.

The right of action in the plaintiffs and the jurisdiction of this Court is fixed by an Act of Congress, duly passed and signed by the President in 1937. The Act is in words and figures as follows:

"Private—No. 96—75th Congress
"(Chapter 215—1st Session)
"(H. R. 327)

"An Act For the relief of Henry H. Carr; Robert E. Wise, Stanley Wise Ellis, and Peyton L. Ellis; and Hilory Wise and Flora A. Wise.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That Henry H. Carr, owner of a certain farm consisting of three hundred four acres of land, more or less, near Camp Knox in Hardin County, Kentucky; and Robert E. Wise, Stanley Wise Ellis, and Peyton L. Ellis, owners of a certain farm consisting of two hundred acres of land, more or less, near Camp Knox in Hardin County, Kentucky; and Hilory Wise and Flora A. Wise, owners of a certain farm consisting

of two hundred and forty acres of land, more or less (in two separate fees of one hundred and twenty acres each, more or less) near Camp Knox in Hardin County, Kentucky, are as such owner or owners, hereby authorized to bring suit or suits as they may respectively desire to so do against the United States of America, to recover damages, if any, for loss or losses, which they may have sustained or suffered, as such respective owners, by reason of establishment, construction, or maintenance of Camp Knox in the State of Kentucky. Jurisdiction is hereby conferred upon the District Court of the United States for the Western District of Kentucky to hear, consider, determine, and render judgments for the respective amounts of such damages, if any, as may be found to have been sustained or suffered by the said owners of said farms, with the same right of appeal as in other cases, and notwithstanding any lapse of time or statute of limitation: Provided, That such action will be. brought within one year from the date that this Act shall become effective."

These three farms are in a remote section of Hardin County, Kentucky, twenty or twenty-one miles from Elizabethtown, the county seat. The nearest town or trading point is Stithton, a village about seven or eight miles from the farms.

Prior to the establishment of Fort Knox, this was a rather good neighborhood, with farmers and their families occupying all of the land which now comprises the Army Post, which covers approximately 30,000 acres. There was a good country school, several churches and a fairly good county road, which permitted the inhabitants to carry on the normal neighborhood life of a prosperous farming community. The community was also served by boats, hauling produce to and from them by way of Salt River, a small navigable stream passing these farms. Medical services and mail and telephone service was available, and also numerous other conveniences which attract people and tend to fix the value of property and which generally contribute to the happiness and contentment of the individual.

The plaintiffs allege and offer testimony to prove that the value of their farms and their business of farming have been damaged or destroyed by the establishment, construction or operation of Fort Knox, which caused the stopping of

navigation on Salt River, complete destruction of their roadway to and from the markets, churches, schools and doctors, loss of community life of every kind so that it is not possible to get labor or tenants to produce crops and has made their farms so unattractive that they have become unprofitable to operate and are not marketable.

Fort Knox was established in January 1918. At that time the farm of Hilory Wise and Flora A. Wise was in their possession. The farm of 240 acres which now belongs to Robert Wise and others was owned by their mother as life tenant, and Robert Wise and other of her children as remaindermen.

It is the contention of the plaintiffs that by reason of the Act of Congress, quoted above, they are entitled to recover damages on three different grounds:

1. Depreciation in the market value of the land which occurred during the early history of the Camp, that was caused both by its establishment and maintenance, the full effect thereof being realized by these plaintiffs on or about January 1, 1922.

2. Depreciation of the profits of the business conducted upon these farms during the period from January 1, 1922, until the filing of these suits, approximately 15 years, caused by further and continuing acts of the Government in the maintenance of the Camp.

3. Such other consequential losses as were caused by the Acts of the Government.

I will take the matters up separately and in the order stated.

There is a great volume of testimony. Witnesses were introduced to show that the road known as the Porter River Road was a fair country road before the Camp was established; that by the operation of large trucks and artillery over it in wet weather the Government had practically destroyed it. That by reason of the destruction of this country road there was no way to get into the farms or from them to the markets. The Government undertook to show that there was another road known as the Dowdell Road that was available for practical use.

I took occasion, accompanied by counsel for both parties, to visit these farms and to go over all roads mentioned in the proof. Taking into consideration all the proof and from personal observation I am

clearly of the opinion that the only practical road that these plaintiffs could use is the Porter River Road, which leads through the reservation. Dowdell Road is of no practical value, in fact it is no road at all to be negotiated with a vehicle of any kind, apparently dangerous even by horse back except in dry weather.

The proof as to value of the farms was widely variant. The plaintiffs and their witnesses placed the value of the farms prior to the establishment of the camp at from $65 to $75 per acre. Since the establishment of the camp at from no value to $10 or $15 per acre.

Some of the witnesses for the Government said the property was more valuable now than it was prior to the establishment of the camp. The testimony was of the character usually found in cases of this kind, so widely different and so far apart that it is of very little help to one charged with the duty of fixing that value. It was for this reason that I personally visited the farms and rather carefully scrutinized them.

Taking into consideration my personal observation and from all the evidence I am convinced that the plaintiffs have suffered substantial damage and their farms have been greatly decreased in value.

The next question to be determined is what amount of damage they have suffered. How much have their farms depreciated in value?

There are, of course, many cases stating the rule by which triers of this fact are to be guided in arriving at a fair figure. The following text from 8 R.C.L. Page 481, title, Damages, Sec. 44, well expresses the rule:

"The proper measure of damages for permanent injury to real property is the diminution in the market value of the property; and if the land is taken or the value thereof totally destroyed, the owner is entitled to recover the actual cash value of the land at the time of the taking or destruction, with legal interest thereon to the time of the trial. Permanency of injury is the proper test for the application of this rule; and this being so, it is obvious that to warrant its application the act complained of must take a part of, or effect a lasting change in, the realty itself. The diminution in the value referred to is the diminution in the market value of the property for any use to which it might be appropriated, and not merely its diminution in value for the purpose to which the plaintiff had dedicated it. * * * Usually depreciation in the value is determined by taking the difference between the value immediately before and immediately after the injury."

Fort Knox is a permanent Army Post and the injury to these farms is a permanent injury, not only by reason of a poor road, which may be temporarily good or bad, but by the additional permanent inconveniences which they will suffer by reason of the very nature of the reservation. Much testimony has been introduced which shows that they have been and apparently always will be hampered and hindered in the enjoyment of their property by interference with the ingress and egress by reason of the firing of shells and by being stopped for hours by officers of the Post to prevent their being injured from gun fire, made necessary by target practice, and other like pursuits connected with the Post.

The measure of damages for permanent injury to real estate is the difference between the reasonable market value of the property immediately before and immediately after the injury. Reed v. Mercer County Fiscal Court, 220 Ky. 646, 295 S.W. 995, 54 A.L.R. 1275.

From the evidence of the plaintiffs no damage occurred until 1922 when the Porter River Road was demolished by the Camp. Carr did not acquire his property until 1920 which was more than two years after the camp was established, and according to the testimony of the plaintiffs who are owners of the other tracts they made money on their farms and claim that no market value was affected until 1922. I think, therefore, they are all on an equal basis.

In fixing the value of farming lands, not only the productivity of the soil, but its location with reference to the county seat, to the markets and its accessibility generally must be considered. As well also must be taken into consideration the improvements such as fencing, dwelling house, barns and general equipment to carry on farming enterprises.

Even before the establishment of the Fort these farms were located in a remote and relatively inaccessible portion of Hardin County. There is much good bottom land on them, but there is also much rough,

apparently unproductive, hill land covered with second growth timber and a very poor type of soil.

It is fair to consider what the owners of these farms thought they were worth by what they gave them in for taxation.

Taking all of these things into consideration and all of the evidence of the various witnesses who testified, these farms before 1922 were reasonably worth $50 per acre.

By reason of the maintenance of Fort Knox and the damages which these owners have thereby consequentially suffered, I think the farms are worth $20 per acre and that an allowance of $30 an acre damage should be awarded the plaintiffs. To Robert Wise, Stanley E. Ellis and Peyton L. Ellis, on 232 acres, the sum of $6,960. To Hilory Wise, on 120 acres, the sum of $3,-600. To Flora A. Wise, on 120 acres, the sum of $3,600. To Henry H. Carr, on 308 acres, the sum of $9,240.

No interest is asked for and is not allowed, nor could it be allowed since the Act does not expressly so provide. United States ex rel. Angarica v. Bayard, 127 U.S. 251, 260, 8 S.Ct. 1156, 32 L.Ed. 159; Walton v. United States, C.C., 61 F. 486.

In determining the second question presented by plaintiffs' pleadings and proof and which is discussed by counsel in briefs it is proper to consider the demurrer which the defendant filed to the fifth and sixth paragraphs of the petition. This case was filed and pleadings made up before the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and a demurrer was proper to determine the legal sufficiency of these pleas. Answer was filed and the case was called for trial before the demurrer was passed on. In the light of the Government's theory that these paragraphs did not allege proper claims, certain objections were made to the introduction of testimony, which were sustained by the Court. The plaintiffs were invited by the Court to make avowals of what the answers to the questions would be, but plaintiffs declined to make their avowals. However, enough of the evidence of this character was admitted to enable the Court to arrive at a fair figure for loss of profits, if such damages are to be allowed.

It is the theory of the plaintiffs, forcefully presented, that they should be allowed damages for loss of profits which they would have derived from their farming operations had it not been for the construction and operation of Fort Knox. The Government opposes these damages on the ground that they were not contemplated in the Act; that they are of such a nature that no fair damage could be fixed; as it could only be a speculation and that the business is of such a nature that it would be impossible to tell whether or not it could have been profitably operated regardless of the establishment of the Camp.

In so far as the Act itself is concerned we may assume, and I think it is a fair assumption from a reading of its contents, that it was the intention of Congress to allow the plaintiff to proceed to recover any and all losses which they sustained. This, however, could only mean that they should be entitled to recover such sum or sums, which are contemplated in law to be recoverable damages. This is not an appropriation measure to pay out to the plaintiffs a certain sum of money, but it only is an enabling Act which waives the security of the Sovereign from suit and permits legal procedure to recover lawful damages. Lawful damages must necessarily be such damages as the law fixes and which are ascertainable in a court of law as recoverable. The proceeding itself is governed by the ordinary rules of law and the pleadings and evidence subject to the same scrutiny and determined by the same tests as any other action which might be filed.

I quote from the case of Central Coal & Coke Co. v. Hartman, 8 Cir., 111 F. 96, 98: "Compensation for the legal injury is the measure of recoverable damages. Actual damages only may be secured. Those that are speculative, remote, uncertain, may not form the basis of a lawful judgment. The actual damages which will sustain a judgment must be established, not by conjectures or unwarranted estimates of witnesses, but from facts by which their existence is logically and legally inferrable. The speculations, guesses, estimates of witnesses, form no better basis of recovery than the speculations of the jury themselves. Facts must be proved, data must be given which form a rational basis for a reasonably correct estimate of the nature of the legal injury and of the amount of the damages which resulted from it, before a judgment of recovery can be law-

fully rendered. These are fundamental principles of the law of damages. Now, the anticipated profits of a business are generally so dependent upon numerous and uncertain contingencies that their amount is not susceptible of proof with any reasonable degree of certainty, hence the general rule that the expected profits of a commercial business are too remote, speculative, and uncertain to warrant a judgment for their loss."

 This brings us then to the determination of the question of whether or not the damages sought are of such a nature that they can be ascertained and fixed with the proper degree of certainty. If they are of that nature the plaintiffs should recover. If not they should be denied recovery. Although the question is not made, I might point out that Robert Wise, Stanley E. Ellis and Peyton L. Ellis could not claim damages prior to 1932 as they were not in possession of their farm until that date,

The business referred to is a farming business for the destruction of which and loss on which the plaintiffs claim damage. They undertake to show this loss by showing, with no records at all, but purely memory, that prior to the destruction of the road and the commencement of the other interferences brought into existence by the Camp they raised so many hogs, chickens, colts, calves and other livestock, and produced so many eggs, so much butter, milk, tobacco, corn and other products of general farming. They then ask the Court to take an average of income over a five-year period and conclude that they would have lost that amount each year for fifteen years since 1922. As an example, one witness testified in all sincerity and apparent seriousness that he had five brood mares and raised five mules which had a market value of $100 each, or $500. That the establishment of the Camp so isolated his farm from the outside world that no breeding stock was available and no buyers would have come to buy his mules had he raised them. Therefore he asks the Court to find that he is entitled to $500 a year for fifteen years for mule colts he would have sold. There is further testimony to the effect that wool was selling for forty cents per pound, that he had a certain number of sheep that produced an equal number of fleeces and that each fleece weighed approximately six pounds. That they sold $12 worth of eggs a week for fifty-two weeks in the year and for fifteen years. That tobacco was twenty cents a pound, corn a dollar bushel, ninety dollars worth of milk per month, and so on throughout a long list of items of farm produce.

I think it can be safely said that there is nothing of a marketable nature that is so highly speculative as the value of farm produce. With reference to the mules, it is known generally that thirty per cent of the mares bred do not get with foal. That these mules are valued largely by color, sex and general conformation and size. That it takes a good mare to produce a black mare mule, sound and all right, with size and bone, to bring a price of ninety dollars. I dare say there is not one in twenty mules foaled that bring $100. For many years between 1922 and 1937, I would say for at least twelve, there was no market for them at all. Good jacks were selling for $10 or $20. Now they are bringing from $1,000 to $3,000. I have gone into some detail in this connection, because it is of general knowledge in farming communities in Kentucky and is a fair example of how highly speculative it would be to try to arrive at a correct amount of damages.

While other products mentioned in the proof may or may not reach the garret and cellar proportions of the mule business, they present an equally uncertain picture. It is known that the value of eggs in one week will go off ten cents to forty cents a dozen. That tobacco and wheat have within the past fifteen years gone from less than the cost of production to average, good and high prices. Hogs have sold from two and one-half cents per pound to eight and ten cents per pound. Wool from twelve cents to fifty-five cents per pound. Calves from four dollars to twenty-five dollars per head and horses and work stock from $20 to $300 per head. The price of milk and dairy products generally has fluctuated with almost equal uncertainty and irregularity. All of these things are related and all of them depend upon a myriad of events for their determination—such items as the weather, economic conditions in the whole world, strikes, government farm policy, scientific knowledge of farming, and innumerable other conditions. To ask a court or jury to say what amount of damages a person has suffered because of curtailment of farming is delving into the highest specu-

lation possible. This fact the courts have long recognized.

■ This question must be determined by this Court in accordance with the rule laid down by the Kentucky Court of Appeals. Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

■ The Kentucky Court has repeatedly held in a long and unbroken line of authorities that where damages sought to be recovered are of such a nature that their amount cannot be shown with sufficient certainty to enable a Court or jury to fix a definite sum without conjecture and speculation, they should be denied entirely. Koch v. Godshaw, 12 Bush 318. Epenbaugh v. Gooch, 15 Ky.Law Rep. 576.

■ In the case of Smith v. Phillips, 29 S.W. 358, 16 Ky.Law Rep. 615, 29 S.W. 358, 359, in commenting upon the speculative nature of farm profits the Kentucky Court said: "It is quite different in a case where you seek to estimate the profits in cultivating a farm, as in this case. The season is an important factor in the calculation. The crops may be large or small, dependent largely upon the season. The price of the products of the farm may be high or low,—not within the power of man to tell. There is no basis from which any calculation can be made as to the profits, if any, that may be realized on such an undertaking. An estimate must necessarily be conjectural. The amount of profits, if there should be any realized, cannot even be approximated."

The basis upon which this general rule rests is that expected profits are too dependent upon numerous, uncertain and changing contingencies to constitute a definite and trustworthy measure of actual damages. Howard v. Stillwell & Bierce Manufacturing Company, 139 U.S. 199, 11 S.Ct. 500, 35 L.Ed. 147.

Citing the Howard case, supra, the United States Circuit Court of Appeals for the Eighth Circuit, in the case of McCornick, et al. v. United States Mining Company, 10 Cir., 185 F. 748, 751, said: "The damages sought to be recovered are based on an alleged loss of profits. The law with respect to loss of profits being the basis of a recovery in an action for damages is that profits which would have been realized, but for the act of defendant, and which are not open to the objection of uncertainty or remoteness, may be recovered, but profits depending upon numerous uncertain and changing contingencies are too indefinite and untrustworthy to constitute a just measure of actual damages. Howard v. Stillwell & Bierce Mfg. Co., 139 U.S. 199, 11 S.Ct. 500, 35 L.Ed. 147; Coosaw Min. Co. v. Carolina Min. Co. et al. (C.C.) 75 F. 860; Central Coal & Coke Co. v. Hartman [8 Cir.], 49 C.C.A. 244, 111 F. 96; Cincinnati Gas Co. v. Western Siemens Co., 152 U.S. 200, 14 S.Ct. 523, 38 L.Ed. 411; Callaway Min. & Mfg. Co. v. Clark, 32 Mo. 305."

■ The third and last proposition on which the one plaintiff seeks to recover damages is that he was required to remove from his farm to the village of Stithton and his living expenses were thereby necessarily increased. He lists as these increased expenses his grocery bill, made necessary by not having his garden, his house rent, electric lights and other conveniences. These matters are of course so remote that they cannot be admitted as the measure of damages. It would be a far departure from the law of damages and of judicial reasoning to undertake to fix any damage to this plaintiff from such facts. It is beyond my comprehension to believe that these matters are seriously urged. Since the case was tried without a jury, some testimony of this character was admitted in order to enable counsel to present his theory of the case. My attention has been called to no precedent admitting such damages and I have been unable to find any, other than the case of Madisonville H. & E. R. Co. v. Ross, 126 Ky. 138, 103 S.W. 3, 30, 31 Ky. Law Rep. 584, 13 L.R.A.,N.S., 420, which is not directly in point.

The plaintiffs are allowed damages for the difference in the market value of the land. All other damages are denied.