**WISE v. UNITED STATES.**

No. 81.

District Court, W. D. Kentucky.

April 7, 1941.

J. W. Clements and D. A. McCandless, Jr., both of Louisville, Ky., for plaintiff.

Eli H. Brown, III, U. S. Atty., and James Garnett, Jr:, and Malcolm P. Wallace, Asst. U. S. Attys., all of Louisville, Ky., for defendant.

MILLER, District Judge.

This action was brought by the plaintiff Charles T. Wise against the United States pursuant to an Act passed by the 76th Congress of the United States wherein Wise as the owner of 304 acres of land near Camp Knox in Hardin County, Kentucky, was authorized to bring suit against the United States to recover damages, if any, for loss which he may have sustained as such owner by reason of the establishment, construction or maintenance of Camp Knox. 53 Stat. 1442. The action is submitted in chief.

Wise was the owner on January 1, 1918, of a farm consisting of three separate tracts of 91¾ acres, 35 acres and 178 acres each, hereinafter referred to as Tracts 1, 2 and 3 respectively. The farm was bounded on the north by Salt River which flows into· the Ohio River, and on other sides by precipitous hills. On or about January 1, 1918, Camp Knox was established as a permanent military post for the purpose of training soldiers and for artillery fire, and has been in constant use since that date. In establishing the post the Government acquired large quantities of land in the neighborhood of plaintiff's farm which materially disrupted the former community life in that part of the county. Wise sold tracts Nos. 1 and 2, totalling 126¾ acres, on January 27, 1920, to Henry Carr for $5,000. He sold tract No. 3 consisting of 178 acres and on which he had constructed a dwelling house to Robert Wise on December 31, 1918, for $6,500. He claims in his petition that the reasonable market value of the entire farm prior to the establishment of Camp Knox was $30,000, and that his property was depreciated in value in the amount of $18,500 by reason of the establishment of the post by the Government. He also claims that he was forced to sell his livestock and farming implements at a sacrifice price to his further damage in the amount of $3,500.

and that the use of his farm by him during the year of 1918 was destroyed by the acts of the Government to his further damage in the amount of $4,000. The Government denies the several items of damage complained of and also contends that the action is barred by reason of a former action instituted by Henry H. Carr on December 10, 1937, in the Federal District Court for the Western District of Kentucky against the United States of America in which action Carr sought damages for depreciation in value of the same land. It will be noticed that Carr acquired Tracts 1 and 2 from the present plaintiff in January, 1920. He also became the grantee once removed from the plaintiff of tract No. 3 after it was sold to Robert Wise on December 31, 1918. That action was tried before another Judge of this District who held on August 19, 1939, that Carr was damaged in the amount of $30 per acre as of January 1, 1922, and rendered judgment in favor of Carr in the sum of $9,240. The opinion in that case is reported as Carr v. United States, D.C., 28 F.Supp. 236.

The Government contends that since it has already paid over $9,000 for damage to this property by reason of the establishment of Fort Knox this action is res judicata. In my opinion the former action is not a bar to the present action even though it involves the same real estate. The two actions are brought by different owners of the same land. It is well settled that in order to render a matter res judicata, among other things there must be identity of parties or their privies, even though the former judgment relied upon as a bar involved the same facts. Ralph Wolff & Sons v. New Zealand Ins. Co., 248 Ky. 304, 58 S.W.2d 623 and cases therein cited. Those in privity to a party to the former litigation are bound because of derivative rights of property, because they have succeeded to some interest in the property subsequent to the commencement of the action, or because of a contractual relationship. A grantor of real estate is not in privity with his grantee, and litigation by the grantee is not a bar to a later action by the grantor not a party to the previous suit. Flinn v. Blakeman, 254 Ky. 416, 429, 71 S.W.2d 961. There are cases in which a real party in interest, although not one of record, will be treated as in privity with the party of record because of his interest in the result of the case and of his active participation and assistance in the prosecution of the case. See Hopkins v. Jones, 193 Ky. 281, 235 S.W. 754; Amburgey v. Adams, 196 Ky. 646, 245 S.W. 514. But that rule is not applicable in the present case as Wise took no part whatsoever in the litigation prosecuted by Carr, and had no financial interest in the result of that suit. The cause of action in that suit was for damages suffered by a subsequent owner occurring subsequent to January 27, 1920, after Wise had sold the property to another. The Government contended in that suit that the diminution in value had occurred prior to January 27, 1920, and Carr had no cause of action, but the Court, on the evidence before it in that case, rejected that contention, and held that the damage occurred while Carr was the owner. In the present action Wise as owner of part of the property up to December 31, 1918, and as owner of the remainder of the property until January 27, 1920, claims that the damage was suffered by him while he was owner. Wise's proof is directed entirely to damage suffered prior to January 27, 1920. No doubt if this action had been tried and disposed of and damages awarded to Wise before the trial of Carr's suit, the judgment in this action would have been a bar to Carr's subsequent action, in that only one cause of action exists for injury to real estate caused by a permanent improvement on adjacent land and all damages, past, present and future, must be recovered in that action. Chicago, St. L. & N. O. R. Co. v. Hicks, 249 Ky. 578, 61 S.W.2d 37; Chesapeake & O. Ry. Co. v. Robbins, 154 Ky. 387, 157 S.W. 903. The cause of action arises when the damage is first suffered and the owner of the property at that time becomes vested with the right of action. Chicago, St. L. & N. O. R. Co. v. Hicks, supra; City of Louisville v. Norris, 111 Ky. 903, 64 S.W. 958, 98 Am.St.Rep. 437; North Jellico Coal Co. v. Trosper, 165 Ky. 417, 177 S.W. 241. Accordingly, if the evidence in this case shows damage to the real estate *while the property was owned by Wise,* by reason of the establishment of Fort Knox the cause of action accrued to Wise, rather than to Carr, and Wise is entitled to recover, irrespective of the result of Carr's prior suit. If the price received from the sales of the property in December, 1918, and January, 1920, is less than its fair market value immediately before the establishment of Camp Knox and such

diminution in value was caused by the establishment of the post, damage to the plaintiff Wise while ownership was in him has been established.

I see no principle of estoppel applicable against the plaintiff in this case as contended by the defendant. The Act of Congress under which this suit is brought was not passed until March 29, 1939, 53 Stat. 1442, which was some 15 months after the Carr suit had been filed and approximately four months after it had been tried and submitted. There was no opportunity on the part of Wise to intervene in that suit. The Government was advised of Wise's claim before the bill authorizing this suit was finally passed, and before the Carr suit was disposed of. The introduction and passage of the bill clearly indicated that Wise intended to press his claim. There was no silence on his part such as would lead the Government to believe he abandoned any claim on his part. Silence, to work estoppel, must amount to bad faith; of such a nature as to induce another to alter his position so that it becomes unconscionable to permit the person remaining silent to enforce his rights. Embry v. Long, 256 Ky. 266, 75 S.W.2d 1036. Accordingly, there was no misrepresentation on the part of Wise, or reliance by the Government upon the same, which is essential in order for the principle of estoppel to apply. Owens v. National Life & Accident Ins. Co., 234 Ky. 788, 29 S.W.2d 557; Kentucky Home Life Ins. Co. v. Kittinger, 262 Ky. 525, 90 S.W.2d 673, 103 A. L.R. 1361.

A large portion of plaintiff's evidence was directed to the disruption of the community life in the territory where the plaintiff's farm was situated by reason of the establishment of the army post, including such facts as discontinuation of telephone service, closing of the neighborhood schools and churches, the removal of doctors to other communities, discontinuation of mail service, and disruption of transportation facilities by reason of discontinuation of navigation on Salt River and artillery fire over the Porter River road which furnished transportation from other communities to the plaintiff's neighborhood. Undoubtedly these conditions either immediately or after a period of time followed upon the establishment and operation of Camp Knox, and even if they did not immediately follow upon the establishment of the camp the reasonable certainty of such results caused a depreciation in the value of the land. But the test to be applied is not the inconvenience or change in manner of living which resulted from the establishment of the post. The proper measure of damages for permanent injury to real property is the diminution in the market value of the property as reflected by the difference between its reasonable market value immediately before and immediately after the injury. Reed v. Mercer County Fiscal Court, 220 Ky. 646, 295 S.W. 995, 54 A.L.R. 1275. Such questions were fully discussed in the opinion in Carr v. United States, supra, to which reference is made. The evidence directed to these points shows the reason for the decline in market value, and substantiates the opinions of the witnesses who testified that such decline was caused by the establishment and operation of the post, yet I believe that the amount of damage is to be measured by the difference between the reasonable market value before and after the acts complained of. Numerous witnesses testified as to the reasonable market value of the land before the establishment of the camp. Plaintiff's witnesses valued the property at from $50 to $80 an acre, while witnesses for the Government placed it at about $40 per acre. A number of the witnesses for the plaintiff, however, were not particularly well qualified and gave opinions which represented purely personal opinions unsupported by substantiating facts, rather than based upon actual sales of similar property. Several witnesses who testified to the higher valuations based their opinions upon sales of other property to the Government, particularly the Davis farm. Some of these witnesses admitted that the Government was paying more for the land it was buying than it was worth. In any event, it seems to be a recognized rule of law that such sales to the Government are not competent evidence, and if not, opinions based on such sales have very little weight. United States ex rel. and for Use of Tennessee Valley Authority v. Reynolds, 5 Cir., 115 F.2d 294. Accordingly, I place chief reliance upon actual sales between private individuals during preceding years. The record discloses that the plaintiff bought 127 acres in 1900 for about $23 per acre, and 178 acres in 1909 for $17 an acre; that the Branch farm of 320 acres sold in 1908 for about $22 per acre. That the Hawkins farm of 110 acres sold in 1910 for $35 per acre; that the

Samuels farm of 155 acres sold in 1912 for about $39 per acre; that the Smith farm of 100 acres sold in 1913 for $35 per acre, and that in 1917 211 acres on Otter Creek sold for about $22 an acre. Some of these properties were hilly or in poor condition and not as valuable as the farm of the plaintiff. Prices also increased a little after 1912. The property was listed for assessment in 1920 at about $24 per acre, which at a 50% assessment would put a valuation on it of less than $50 per acre. The following two witnesses who seemed to be qualified from experience with actual sales and valuations to express a worthwhile opinion gave the following valuations: Mr. Hines, a former tax commissioner and a witness for the plaintiff, valued the property at $50 an acre; Mr. McCullum, a real estate auctioneer in that locality for 25 years, and a witness for the defendant, valued the property at about $40 per acre. Giving full consideration to all of these facts, I believe that a valuation of $45 to $50 per acre as of January 1, 1918, is a fair one. In the present case substantial improvements were placed upon the property in 1914 at a cost of from $6,000 to $6,500. The evidence is somewhat meager as to the reasonable value of the improvements in December, 1918. The Court fixes this valuation from the evidence available at $4,000. The property was sold after the establishment of the Fort for $11,500. The Government claims that the sale price did not represent the true market value of the property because it was a sale forced by past maturity of several mortgages. The evidence shows such mortgages to exist and their satisfaction subsequent to the sales in question. The mortgages were no doubt a reason for Wise wanting to dispose of the property, and although the evidence fails to show that any pressure was exerted by the mortgagees to force the sale, yet it probably was an intangible factor in persuading the plaintiff to dispose of his property at something less than its real market value. This conclusion is supported by the fact that in January, 1920, when Henry Carr purchased from the plaintiff tracts Nos. 1 and 2 for $5,000, he also purchased tract No. 3 from Robert Wise for $8,500, which the plaintiff had sold to Robert Wise for $6,500 approximately a year before. Also the farm was worth materially more as a whole than when divided into two parts. In my opinion the figure of $13,500 more closely represents the reasonable market value of the property at the time when it was sold than does the $11,500, for which it was actually sold. From a recapitulation of the foregoing valuations, I place the plaintiff's damage by reason of diminution in the value of his land at $5,000. Under the circumstances in this case this allowance will not bear interest.

I am of the opinion that the plaintiff is not entitled to recover for the other items of damage claimed. It is not satisfactorily shown that he was deprived of the use of his farm during the years 1918 and 1919. Although transportation to and from the farm was difficult and life on the farm was not as pleasant as it had been before, yet the farm could be reached and could be used. In fact, the plaintiff rented and lived on adjoining property for some time after he sold his own property. The difficulties in making satisfactory use of the property are compensated for in its diminution of value. In addition there is no competent evidence showing what damage was suffered in this respect. As was pointed out in Carr v. United States, supra [28 F.Supp. 242], net income from farming operations depends upon a myriad of events for its determination, including "such items as the weather, economic conditions in the whole world, strikes, government farm policy, scientific knowledge of farming, and innumerable other conditions. To ask a court or jury to say what amount of damages a person has suffered because of curtailment of farming is delving into the highest speculation possible." The evidence also fails to substantiate plaintiff's claim that he was forced to sell his stock and farming implements at a sacrifice price to his further damage in the amount of $3,500. These articles may have been sold for less than the plaintiff thought they were worth, and may have been sold in a hurry because the plaintiff for his own convenience wished to dispose of them. But markets were available for disposing of these articles and the plaintiff had the opportunity of selling them under conditions which would bring their reasonable market value. His act in disposing of his property which required him to dispose of his stock and farming implements, was his own voluntary act and his undue haste in making a sale can not be charged to the Government. Plaintiff contends that a proper construction of the Act of Congress authorizing this suit allows him

to recover for all damages shown to have been suffered by him. I do not put that construction on the Act. It was not an appropriation measure. It waived the immunity from suit on the part of the United States, and any Statute of Limitations that would have barred the action, and also gave to the plaintiff a cause of action which might not have existed under common law principles. See Franklin v. United States, 6 Cir., 101 F.2d 459. But it did not relieve the plaintiff from the necessity of showing by competent evidence that the damage for which he is to recover was caused, as such term is legally used, by the establishment of Fort Knox by the defendant.

Judgment will be entered for the plaintiff in the amount of $5,000. Plaintiff's counsel will prepare and tender for approval findings of fact and conclusions of law in accordance with the views expressed in this memorandum.